**J. E. WALLING et al., Appellants,**

v.

**John KIMBROUGH et al., Appellees.**

No. 3777.

Court of Civil Appeals of Texas.

Eastland.

March 8, 1963.

Rehearing Denied March 29, 1963.

Powell, Rauhut, McGinnis, Reavley & Lochridge, James W. Wilson, Austin, for appellants.

T. R. Odell, Lubbock, for appellees.

PER CURIAM.

Appealed from the District Court of Haskell County.

John Kimbrough and other tax paying citizens of the City of Haskell were granted a permanent injunction against the Mayor, all members of the City Council and the City Secretary enjoining them "from paying out any more of the funds of the City of Haskell for attorneys' fees to prosecute suits against the North Central Texas Municipal Water Authority or from paying out any of said funds for expense incurred by any of the defendants for trips in opposition to said water district."

The city officials have appealed contending the court erred (1) in granting a permanent injunction at a hearing for a tem-

porary injunction (2) in holding that the City of Haskell may not expend City funds in opposing the Millers Creek project and (3) in enjoining the City officials from paying out city funds for attorneys' fees to prosecute suits against the North Central Texas Municipal Water Authority.

The judge's fiat of August 7, 1962, granting a temporary restraining order against the officials recited "that this cause is here now set down upon the plaintiffs' application for a temporary injunction on the 15th day of August, 1962; that notice issue to the defendants commanding them to appear before this court at the Court House in Haskell County, Texas at said time and place to show cause, if any they have, why a temporary injunction should not be issued in this cause." An order was entered postponing the hearing until September 5, 1962, and recited "the plaintiffs' application for temporary injunction is set for hearing on that date." Another order was entered postponing the hearing for a temporary injunction until September 21, 1962. At the September 21st hearing the court entered a permanent injunction against the appellants.

 The hearing on application for a temporary injunction is governed by Rule 686 of the Texas Rules of Civil Procedure as follows: " * * * provided further that the court may have a hearing upon application for a temporary restraining order or temporary injunction at such time and upon such reasonable notice given in such manner as the court may direct." "In a hearing on an application for a temporary injunction the only question before the court is the right of the applicant to a preservation of the status quo of the subject matter of the suit pending a final trial of the case on its merits. James v. [E] Weinstein & Sons, Tex.Com.App., 12 S.W. 2d 959, 960. To warrant the issuance of the writ, the applicant need only show a probable right and a probable injury; he is not required to establish that he will finally prevail in the litigation. Rosenfield

v. Seifert, Tex.Civ.App., 270 S.W. 220, 223; Nagy v. Bennett, Tex.Civ.App., 24 S.W.2d 778, 781; High on Injunctions 4th Edition, Vol. 1, Sec. 5, p. 8." Transport Co. of Texas et al. v. Robertson Transports, Inc., et al., 152 Tex. 551, 261 S.W.2d 549. Also see Camp v. Shannon, 348 S.W. 2d 517, (Sup.Ct.). At a hearing on an application for a temporary injunction ex parte affidavits may be offered in evidence. The evidence need only show a "probable right" and a "probable irreparable injury." No jury may be demanded at a hearing for a temporary injunction. A hearing for a permanent injunction is conducted in accordance with the rules governing the trial of civil suits generally and either party is entitled to a jury. Texas Practice by Lowe and Archer pages 361, 365.

After the appellees announced ready for trial, they discovered that only one of the appellants had been served with citation. The other appellants voluntarily entered their appearance conditioned on the fact that they would be permitted to adopt the pleadings of the appellant that had been served and who had filed an answer. Appellees say "It will be noted that the answer of J. E. Walling, Jr., and adopted by the other defendants filed an answer to plaintiffs' Petition and did not limit the answer to the petition for temporary injunction." In the original answer of appellant J. E. Walling, Jr., which was expressly adopted by the other appellants, we find the following: "For the purposes of hearing on the plaintiffs' application for temporary injunction, and *for no other purpose*, this defendant alleges the following in answer to the plaintiffs' petition."

██ This case was set for a hearing on appellees' application for a temporary injunction. There is nothing in the record to indicate that appellants agreed to a hearing on the merits. Therefore, we are compelled to sustain appellants' point that the court erred in granting a permanent injunction at the hearing for a temporary injunction.

The basic issue involved is whether the City of Haskell has the legal right to oppose the Millers Creek Project of the North Central Texas Municipal Water Authority, hereinafter referred to as Authority. The parties stipulated that the City of Haskell is a statutory municipality. Article 8280–193 Vernon's Ann.Civ.St. created the Authority. It authorized the Authority to develop a water supply and to contract and sell water to Haskell and other cities in that area. The City's position here is "that a previous City Council signed a water supply contract with the Authority, but this in no way affects the City Council's powers with respect to the operation and maintenance of its municipal water system. And if in its opinion the Millers Creek Project is not feasible as a source of water supply for Haskell, it is within the City's discretion to oppose its implementation." It further contends that it has the power and a duty to supply a suitable water supply and to own and maintain a municipal water system for its inhabitants under Subdivision 30 of Article 1015 and Article 1109 of V.A.C.S. Said Subdivision 30 of Article 1015 reads in part as follows: "The governing body shall also have power: Water system.—To provide, or cause to be provided, the city with water; to make, regulate and establish public wells, pumps and cisterns, hydrants and reservoirs in the streets or elsewhere within said city or beyond the limits thereof, for the extinguishment of fires and the convenience of the inhabitants, and to prevent the unnecessary waste of water."

Appellees' grounds for injunctive relief were that the city officials were unlawfully spending city funds for attorneys' fees in prosecuting suits against the Authority, and were spending money for expenses in connection with its law suits. Appellants in their answer admitted "that pursuant to their duty and responsibility to provide a suitable municipal water supply for the City of Haskell and to safeguard the revenues of the City, the defendants have opposed and will continue to oppose the North Central Texas Municipal Water Authority in its effort to construct the Millers Creek Dam and Reservoir as a source of municipal water supply for the City of Haskell. It is further admitted that the defendants have employed legal counsel to assist them in this effort and that they will continue to do so." They also admitted "that in carrying out their duty and responsibility to provide a suitable municipal water supply for the City of Haskell the defendants have expended a small amount for expenses in opposing the North Central Texas Municipal Water Authority in its effort to construct the Millers Creek Dam and Reservoir as a source of municipal water supply for the City of Haskell."

■ "This court recognizes the right of a taxpaying citizen to maintain an action in a court of equity to enjoin public officials from expending public funds under a contract that is void or illegal. Looscan v. County of Harris, 58 Tex. 511; City of Austin v. McCall, 95 Tex. 565, 68 S.W. 791; Terrell v. Middleton, Tex.Civ.App., 187 S.W. 367, error refused 108 Tex. 14, 191 S.W. 1138, 193 S.W. 139; Hoffman v. Davis, 128 Tex. 503, 100 S.W.2d 94. The vigilance of a citizen who takes upon himself that burden in the interest of good government is to be commended. However, the procedure is generally recognized as being drastic and, in order to be authorized to maintain such an action, a citizen must bring himself strictly within the established rules. Governments cannot operate if every citizen who concludes that a public official has abused his discretion is granted the right to come into court and bring such official's public acts under judicial review. The right, therefore, of a citizen to maintain such an action is strictly limited to cases of illegality of the proposed expenditure and does not extend to cases of unwise or indiscreet expenditures." Osborne v. Keith, 142 Tex. 262, 177 S.W.2d 198.

Apparently the citizens of Haskell have elected members of their governing body

who favor abandonment of the Millers Creek Project.

■ In Superior Incinerator Co. of Texas v. Tompkins, 59 S.W.2d 102, (Tex. Com.App.), the incinerator company was awarded a contract for construction of an incinerator plant by the City of Dallas. After a change of administrations, the new board of Commissioners determined that there was no need for the construction of such a plant and rescinded all of the orders upon which the contract was predicated. The City Auditor refused to countersign the contract. The company sought a writ of mandamus against the auditor to compel him to countersign the contract. The trial court denied the writ and its judgment was affirmed by the Court of Civil Appeals. In affirming the judgments of the lower courts the Commission of Appeals said: "While the city could not lawfully rescind the contract made by its award of this construction work to relator without his consent, it unquestionably had the power to abandon the proposed improvement. This abandonment, however, subjects it to liability for such damages as relator may sustain, provided he is able to establish that his contract has been made in conformity to the provisions of the city's charter and ordinances governing the execution of such contract." "It is a well-settled doctrine that a city has the power to abandon a proposed public improvement, even though in doing so it may breach a contract it has made therefor. In discussing this power the Supreme Court of Washington, in the case of Broad v. City of Spokane, 59 Wash. 268, 109 P. 1014, 1015, used this language: 'That the city had power to abandon these proceedings at the time it did abandon them, we think there can be no question, even though such abandonment resulted in a breach of contract with the appellant. The power is deducible from the general powers of the city; in fact, from the power to proceed with the work. If this were not so, there could be no relief from improvident undertakings. The city could not under the appellant's view, abandon the work of constructing this sewer on the return of the assessment roll, even though it then discovered that the sewer would not when completed perform its functions and must be immediately destroyed. We cannot think that the city is thus helpless.'"

In Gillam v. City of Fort Worth, Tex. Civ.App., 287 S.W.2d 494, the court said: "The Councilmen who enacted the ordinance and made the contract here involved are responsible, not to the courts, but to the great body of the people who elected them. Where they have not exceeded their lawful powers, the courts cannot interfere. The necessity, wisdom, or expediency of their acts are matters for their exclusive determination. Their acts are legislative; the judicial function is to construe and apply the law, rather than to determine the wisdom of legislation. City of San Antonio v. Fetzer, Tex.Civ.App., 241 S.W. 1034."

■ The statute, in general terms, gives the city the power to provide a suitable water supply. The manner in which the city exercises this power rests largely in the discretion of its governing body. 30-A T.J. page 349, Section 350. The city has the power to exercise discretionary authority over its municipal water supply. It has the authority to oppose the implementation of the Millers Creek Project as a source of water supply for the city. In the case of Ball v. Texarkana Water Corporation, Tex.Civ.App., 127 S.W. 1068 on page 1070 the court said: "Being a creature of the state, a municipal corporation possesses only such powers as the state grants to it in express terms, or such as are necessarily implied from the express grants, or such as are inherent or indispensable to its corporate existence. Such inherent powers are generally defined to be such as the right to sue and be sued, to grant, receive, and hold property in the corporate name, to have a seal, to make by-laws and ordinances for the government of the corporation, and to have succession." The city also has the implied power to employ attor-

neys and incur other reasonable and necessary expenses in the exercise of such powers.

The judgment is reversed and judgment is rendered for appellants. The injunction is dissolved.

GRISSOM, C. J., not sitting.