**AMF TUBOSCOPE, Appellant,**

v.

**E. Ray McBRYDE and Kent Turner, Appellees.**

**No. 1900.**

Court of Civil Appeals of Texas, Corpus Christi.

May 21, 1981.

Rehearing Denied June 18, 1981.

Richard A. Hall, Gary, Thomasson, Hall & Marks, Corpus Christi, for appellant.

Paul G. Kratzig, Kendrick & Kratzig, Corpus Christi, for appellees.

## OPINION

NYE, Chief Justice.

AMF Tuboscope, Inc., appeals from the denial of a temporary injunction against E. Ray McBryde and Kent Turner to enforce a noncompetition covenant in their employment contracts. The trial judge's conclusions of law indicate that it was denied on the basis that "(i) Plaintiff has failed to prove irreparable injury and a need for protection, and (ii) the hardship to Defendant McBryde (and Turner) outweighs the possible danger to Tuboscope."

The parties executed an employment agreement that contained a noncompetition covenant that, in the event of termination of employment, they agree for a period of two years, in a zone of 100 miles, not to engage directly or indirectly in a competing business.[1]

On August 26, 1977, Tuboscope entered into such employment contract with E. Ray McBryde; and on July 10, 1978, Kent Turner entered into the same contract. Both men resigned from their employment with Tuboscope on January 6, 1981. They began work the same day for Nueces Inspection Company, calling on the same customers they once called upon for Tuboscope.

Appellant's application for temporary injunction alleged a violation of the contractual covenant set out above. The appellant asserts in its points of error that the trial court abused its discretion in denying the

---

1. "Management, sales, engineering and technical employees, and field operators have received or will receive specialized knowledge and/or training in Tuboscope's business, at Tuboscope's expense, including disclosure of Tuboscope's proprietary information, and such employees will have the opportunity to gain close knowledge of and possible influence over customers of Tuboscope by reason of personal contacts during the course of employment, and will in some measure possess the good will of Tuboscope. In order to protect Tuboscope against disclosure of its proprietary information and against unfair loss of customers or good will, Employee agrees that if he is assigned now or at any time during his employment to such a position, then for a period of two years following the date of termination for any reason of his employment with Tuboscope, he shall neither become an employee of any employer who competes with Tuboscope in any business in which Tuboscope is engaged at the time of his termination, nor engage, directly or indirectly in such business in any other capacity, *in a zone of 100 miles radius* from a facility, location or office of Tuboscope or its customers where Tuboscope in the year preceding the date of such termination, shall have done such business." (emphasis added).

temporary injunction because the evidence shows: (1) that appellees violated the non-competition covenant; and (2) that a temporary injunction is the only adequate remedy.

The only question before the court in a hearing on an application for a temporary injunction is the right of the applicant to a preservation of the status quo of the subject matter of the suit pending a final trial of the case on its merits. *Transport Co. of Texas v. Robertson Transports*, 261 S.W.2d 549 (Tex.Sup.1953); *Home Sav. Ass'n v. Ramirez*, 600 S.W.2d 911 (Tex.Civ. App.—Corpus Christi 1980, writ ref'd n. r. e.). An applicant is not required to establish that he will prevail on final trial, but he needs only to plead a cause of action that will show a probable right on final trial to the relief he seeks and probable injury in the interim time in order to warrant the issuance of the temporary injunction. *Sun Oil Co. v. Whitaker*, 424 S.W.2d 216, 218 (Tex.Sup.1968). See *Davis v. Huey*, 571 S.W.2d 859 (Tex.Sup.1978); *Matlock v. Data Processing, Inc.*, 618 S.W.2d 327, 24 Tex.Sup.Ct.J. 313 (1981).

The fact that in the present case the only issue involved is the appropriation by the employees of Tuboscope's good will and not Tuboscope's trade secrets, will not prevent the issuance of a temporary injunction to preserve the existing condition until the case can be tried on the merits. Once presented, a valid contract and admitted violations thereof, it became the duty of the trial court to apply the law to the undisputed facts. *Hartwell's Office World v. Systex Corp.*, 598 S.W.2d 636 (Tex.Civ.App.—Houston [14th Dist.] 1980 writ ref'd n. r. e.); *MGJ Corp. v. City of Houston*, 544 S.W.2d 171 (Tex.Civ.App.—Houston [1st Dist.] 1976 writ ref'd n. r. e.); *McCan v. Missouri Pac. R. Co.*, 526 S.W.2d 754 (Tex.Civ.App.—Corpus Christi 1975, no writ).

A review of the evidence reveals that Tuboscope showed a probable right to relief on a final hearing. McBryde had worked for Tuboscope for over twenty-one years, the last six of which were spent in Corpus Christi. Turner worked for Tuboscope as general sales manager in the Corpus Christi division for two and one-half years.

Tuboscope is engaged in the business of non-destructive inspection and testing of oil field pipe and tubular goods. Its Corpus Christi division has a territory extending from Corpus Christi north to Victoria, west to Carrizo Springs, and south to the Rio Grande Valley. Both men received virtually all their training in the pipe inspection business from their employment at Tuboscope. McBryde and Turner left Tuboscope voluntarily on January 6, 1981, and, on the very same date, commenced employment with Nueces Inspection Company, Inc., in Corpus Christi, Texas. Nueces Inspection Company then began to engage in the same business as Tuboscope—the non-destructive testing and inspection of tubing and pipe. McBryde and Turner performed the identical functions for Nueces that they had previously performed for Tuboscope.

McBryde and Turner were solely responsible for Nueces Inspection Company's sales and solicitation of customers. Both men solicited and obtained work from customers of Tuboscope. In fact, the evidence shows solicitation was made *only* of Tuboscope customers. McBryde named the customers of Tuboscope that he had solicited as: Houston Natural Gas, Padre Tubular, Watson Pipe, Edwin L. Cox, Forrest Oil, Hardin & Company, Exxon, Coastal States, Texas Oil & Gas and Pennzoil. Turner verified the accuracy of McBryde's testimony and added a few additional customers—Crystal Oil and Border Exploration. As of the hearing date, McBryde and Turner had been successful in getting business from six of the above-named customers.

While with Tuboscope, McBryde and Turner had both received entertainment allowances for the purpose of obtaining the good will of Tuboscope customers; and they had built up such good will while with Tuboscope. Both men are continuing to call on their former customers, advising these same companies that they are now with Nueces Inspection, and would like to have their business.

**108**

The trial court found that the noncompetition clause in the contracts entered into by McBryde and Turner were unreasonable "as to both period of time specified and designated area of noncompetition." The test for determining unreasonableness of a noncompetition clause is set out in *Weatherford Oil Tool Company v. Campbell*, 340 S.W.2d 950, 951 (Tex.Sup.1964), wherein the Court stated:

"Where the public interest is not directly involved, the test usually stated for determining the validity of the covenant as written is whether it imposes upon the employee any greater restraint than is reasonably necessary to protect the business and good will of the employer . . . a restraint of trade is unreasonable . . . if it is greater than is required for the protection of the person for whose benefit the restraint is imposed or imposes undue hardship upon the person restricted."

There was testimony to the effect that the territory of both McBryde and Turner was approximately 100 miles from their office. It has been repeatedly held that a noncompetition agreement is enforceable in "the area where the employee had worked for his former employer." *Martin v. Kidde Sales & Service, Inc.*, 496 S.W.2d 714 (Tex.Civ.App.—Waco 1973, no writ); *American Speedreading Academy, Inc. v. Holst*, 496 S.W.2d 133 (Tex.Civ.App.—Beaumont 1973, no writ); *Whites v. Star Engraving Co.*, 480 S.W.2d 757 (Tex.Civ.App.—Corpus Christi 1972, no writ). See also, *Chenault v. Otis Engineering Co.*, 423 S.W.2d 377 (Tex.Civ.App.—Corpus Christi 1967, writ ref'd n. r. e.). We hold that the area in which the noncompetition agreement specified (a 100-mile radius) is reasonable.

The two-year period of noncompetition is likewise reasonable. No case authority has been cited by appellees for the proposition that two years is unreasonable. Two to five years has repeatedly been held a reasonable time in a noncompetition agreement. *Arevalo v. Velvet Door, Inc.*, 508 S.W.2d 184 (Tex.Civ.App.—El Paso 1974, writ ref'd n. r. e.); *Electronic Data Systems Corp. v. Powell*, 508 S.W.2d 137 (Tex.Civ.App.—Dallas 1974, writ ref'd n. r. e.); *Weber v. Hesse Envelope Co.*, 342 S.W.2d 652 (Tex.Civ.App.—Dallas 1960, no writ).

The record establishes that appellant would suffer probable harm prior to a final hearing if a temporary injunction is not granted. The evidence is undisputed that the parties agreed to the contract and that appellees had breached the contract and violated their noncompetition provision. Additionally, appellees admitted that they had received their only training in the pipe inspection field from appellant; that they are now servicing many of appellant's customers; that they are in direct competition with appellant for their business; and that they are still using the good will and rapport with the customers that they originally developed while working for Tuboscope. All of this shows that appellees are irreparably damaging the good will and business established by Tuboscope.

We hold that appellant's business would be continually jeopardized by this breach of the parties' contract, and it would be difficult to establish the amount of damages incurred in the future before the case can be tried on its merits. See *Hartkopf v. Southland Corp.*, 256 S.W.2d 241, 244 (Tex.Civ.App.—Austin 1953, no writ); *Hartwell's Office World v. Systex Corp.*, supra. Our review of the adequacy of the final remedy at law is a question of law. The remedy must give to the plaintiff complete, final and equal relief to be adequate. *Story v. Story*, 176 S.W.2d 925 (Tex.Sup.1944); *Long v. Castaneda*, 475 S.W.2d 578 (Tex.Civ.App.—Corpus Christi 1972, writ ref'd n. r. e.). The record clearly shows that appellant has no adequate remedy at law for the protection of its business interests during this interim period. We are of the opinion that the trial court erred in not applying the law to the virtually undisputed facts. *Southland Life Insurance Co. v. Egan*, 86 S.W.2d 722 (Tex.Sup.1935); *Traweek v. Shields*, 380 S.W.2d 131, 135 (Tex.Civ.App.—Tyler 1964, writ ref'd n. r. e.).

We reverse the trial court's denial of injunctive relief and remand this case for issuance of an order temporarily enjoining appellees, E. Ray McBryde and Kent Turner, as provided in the noncompetition agreement until the case can be heard on the merits. Due to the nature and extent of such an order, it is suggested by this Court that the trial court schedule this trial on the merits at an early date.

REVERSED AND RENDERED.

BISSETT, J., not participating.