**KEYSTONE LIFE INSURANCE COMPANY, Appellant,**

v.

**MARKETING MANAGEMENT, INC., and M.M. Administrators Corp., Appellees.**

No. 05–84–01048–CV.

Court of Appeals of Texas, Dallas.

Feb. 15, 1985.

**90**

David L. Patterson, Maxwell, Godwin & Carlton, Dallas, for appellant.

Larry M. Lesh, Locke, Purnell, Boren, Laney & Neely, Dallas, for appellees.

Before GUITTARD, C.J., and WHIT-HAM and GUILLOT, JJ.

GUITTARD, Chief Justice.

Keystone Life Insurance Company appeals from an order granting a preliminary injunction pending trial of claims by Marketing Management, Inc. ("MMI") that Keystone misappropriated MMI's confidential and trade secret information. Keystone complains that the trial court abused its discretion in granting the order because: (1) MMI failed to establish a probable right to recovery; (2) MMI has an adequate remedy at law; (3) MMI had "unclean hands;" (4) the order is overbroad; and (5) the order violates TEX.R.CIV.PROC. 683. For the reasons set forth below, we affirm the order of the trial court.

The purpose of a temporary injunction is to preserve the status quo of the subject matter of the suit pending a final trial of the case on its merits. *Janus Films Inc. v. City of Fort Worth*, 163 Tex. 616, 358 S.W.2d 589 (1962). Because the trial judge is endowed with broad discretion to grant or deny the injunction, appellate review is limited to the narrow question of whether the action of the trial judge in granting or denying the temporary injunction constitutes a clear abuse of discretion. *Janus Films*, 358 S.W.2d at 589. Accordingly, we review the facts only as necessary to make this determination.

MMI is an insurance agency offering group life, health and accident insurance coverages to small and medium-sized employers through a trust arrangement

known as the "Policyholders Employees Trust" (PET). MMI entered into an agreement with Keystone, an insurance company, to provide group health and life insurance for the PET policyholders using marketing knowledge and agency relationships provided by MMI and the insurance facilities and claims administration knowledge of Keystone.

Under the contract Keystone agreed to assume all new claims filed under the existing plans and to reinsure all new plans written by MMI and a mutually acceptable primary carrier that Keystone was to provide. The primary carrier was to act as a marketing front while Keystone was to assume all the risk, pay claims, and audit premium collections. The names and addresses of the policyholders were made available to Keystone pursuant to the agreement with MMI and were used by Keystone in performing its duties under the agreement. A dispute between the parties resulted in termination of the agreement.

MMI brought suit and petitioned for a preliminary injunction alleging that before and after termination of its contract with Keystone, Keystone solicited PET insureds to join a competing trust arrangement. Evidence at the hearing showed that Keystone was soliciting PET insureds using information obtained under its contract with MMI, including names and addresses of over 900 certificate holders. This information was not generally available to persons in the business of selling group insurance. Keystone's solicitations were directed to the PET insureds after MMI sent notice of termination of its contract with Keystone. The solicitations contained premium statements similar in appearance to those generated for the PET plan, which could have been interpreted as soliciting continued payments for the plan in which the policyholders were already enrolled. The same certificate numbers, agency number, and effective dates were given as in previous PET statements. There was also evidence that Keystone intended to continue such solicitations unless restrained by the court. The trial court granted an injunction restraining Keystone from continuing to solicit PET policyholders and from inducing those policyholders to discontinue their relationship with MMI.

■ Keystone first contends that the evidence is insufficient on four grounds to show a probable right of recovery. However, since the standard of review is to "draw all legitimate inferences from the evidence in the light most favorable to the trial court's judgment," *David v. Bache Halsey Stuart Shields, Inc.*, 630 S.W.2d 754, 757 (Tex.App.—Houston [1st Dist.] 1982, no writ), these factual insufficiency points are not proper grounds for review.

Next, Keystone contends that there is no evidence to show a probable right of recovery because the contractual relationship between Keystone and MMI was not one that established fiduciary duties or a duty of confidentiality. The contract itself reads: "The parties are independent contractors with respect to each other. Nothing in this agreement shall be construed to create the relationship of employer and employee, principal and agent or partners or joint venturers." Furthermore, MMI did not tell Keystone that the information was confidential. Also, Keystone argues that MMI did not prove sole ownership of the information and cannot support an action without so doing.

MMI responds that the parties were bound by the terms of the contract to perform that contract in good faith and that Keystone's actions are a breach of good faith. Further, MMI contends that recovery for misappropriation of confidential information is not dependent on contractually imposed duties, but, that the right is created by the confidence given, and that an express confidential relationship is not required to establish its cause of action. MMI also maintains that recovery is not predicated on "ownership" but merely on a protectible interest. In support of these contentions, MMI cites *Hyde Corporation v. Huffines*, 158 Tex. 566, 314 S.W.2d 763, 769–70 (1958); *cert. denied*, 358 U.S. 898, 79 S.Ct. 223, 3 L.Ed.2d 148 (1958); *Texas*

*Shop Towel, Inc. v. Haire*, 246 S.W.2d 482, 485 (Tex.Civ.App.—San Antonio 1952, no writ); 2 R. Callmann, *Unfair Competition, Trademarks & Monopolies*, § 14.33 (4th ed. 1982); *Restatement of Torts*, § 757 (1939).

Although these authorities tend to support MMI's position, they are not controlling with respect to the facts of the present case. Keystone's authorities are likewise inconclusive. Whether the circumstances of this case are sufficient to show that the information in question was understood to be secret and whether the relationship between the parties under their contract was of such a confidential character as to impose a duty to use the information only for the purpose of performing the contract are mixed questions of law and fact, and the full facts have not been developed. The trial judge has the discretion to reserve difficult questions of law and fact, such as these, for full development at a plenary hearing. *Irving Bank & Trust Co. v. Second Land Corp.*, 544 S.W.2d 684, 687 (Tex.Civ.App.—Dallas 1976, writ ref'd n.r.e.). Furthermore, we will not decide these questions since that would be a premature decision of the merits of this case and beyond the permissible scope of review. *Iranian Muslim Organization v. City of San Antonio*, 615 S.W.2d 202, 208 (Tex. 1981); *Brooks v. Expo Chemical Co.*, 576 S.W.2d 369 (Tex.1979); *Irving Bank & Trust Co.*, 544 S.W.2d at 688.

To warrant a preliminary injunction the applicant need only show "a probable right and a probable injury; he is not required to establish that he will finally prevail in the litigation." *Walling v. Kimbrough*, 365 S.W.2d 941, 943 (Tex.Civ.App.—Eastland) (per curiam), *aff'd*, 371 S.W.2d 691 (Tex.1963); *Irving Bank & Trust*, 544 S.W.2d at 687. With respect to Keystone's contention that there is no evidence of the customer lists' confidentiality or that Keystone misappropriated the information, we hold that the evidence supports a probable right of recovery and that no clear abuse of discretion is shown in granting the injunc-tion to preserve the status quo pending final trial and decision on the merits.

Next, appellant submits that the court abused its discretion in granting the injunction because MMI has an adequate remedy at law by an award of damages. The use of confidential information to gain access to customers of a competitor has been recognized as a ground for injunctive relief because of the difficulty of establishing the amount of damages. *David v. Bache Halsey Stuart Shields, Inc.*, 630 S.W.2d 754, 756–57 (Tex.App.—Houston [1st Dist.] 1982, no writ) ("One cannot assign a dollar value to a company's loss of clientele, goodwill, office stability...."); *see AMF Tuboscope v. McBryde*, 618 S.W.2d 105, 108 (Tex.Civ.App.—Corpus Christi 1981, writ ref'd n.r.e.). The evidence here is that, because of the similarity of the Keystone trust to MMI's trust, Keystone's solicitation from the PET customer list would substantially affect MMI's business. Keystone admittedly plans to continue soliciting from MMI's customer list unless enjoined from doing so. Thus, the irreparable injury is that the information in question, the subject matter of the suit, would be fully exploited before the trial and MMI's resulting loss could not be accurately determined. Consequently, we hold that MMI has made a sufficient showing of probable harm in the interim before trial, not fully reparable by damages, such that in maintaining the status quo the trial judge has not abused his discretion.

Keystone relies on *Daily International Sales Corp. v. Eastman Whipstock, Inc.*, 662 S.W.2d 60, 64 (Tex.App.—Houston [1st Dist.] 1983, no writ), for the proposition that MMI's loss of business and profits as a result of competition from Keystone is curable by an award of damages. In *Daily International* the appellate court sustained the trial court's exercise of its discretion in denying a preliminary injunction in a confidential information case. The language Keystone refers to is only one of several alternative reasons given for upholding the lower court's denial of the temporary injunction. A more substantial

ground was the appellate court's finding that there was no evidence that disclosure of the information was occurring or would occur in the future. 662 S.W.2d at 64.

■ Next, Keystone asserts that the trial court erred because it granted equitable relief to one with "unclean hands," alleging that MMI anticipatorily breached the contract with Keystone on which MMI bases its cause of action. However, the only question before the trial court was whether to maintain the status quo—not to determine the ultimate rights of the parties. *City of San Antonio v. Producers Association of San Antonio*, 314 S.W.2d 413, 415 (Tex.Civ.App.—Eastland 1958, no writ). There is no abuse by the trial court if a cause of action is alleged and evidence which tends to sustain the cause of action is introduced. *Transport Co. of Texas v. Robertson Transports, Inc.*, 152 Tex. 551, 261 S.W.2d 549, 552 (1953); *Producers Association*, 314 S.W.2d at 416. Thus, it would be within the trial court's discretion to reserve matters of a purely defensive nature to the plenary hearing. Without commenting on the merit of this claim, we simply hold that no clear abuse of discretion is shown.

■ Keystone further contends that the trial court abused its discretion because the order is overbroad, an unreasonable restraint on trade, punitive in nature, and beyond the scope of MMI's petition. The order prohibits Keystone from:

a. Selling or attempting to sell any form of insurance issued by any other company to or on *any of the insureds of Policyholders Employee Trust* ("PET"), sponsored by plaintiffs Marketing Management, Inc. and M.M. Administrators Corp. in the State of Texas; or

b. Inducing or attempting to induce *any of the insureds of PET* sponsored by plaintiffs Marketing Management, Inc. and M.M. Administrators Corp. to cancel, lapse or fail to renew their policies with PET, which is sponsored by plaintiffs Marketing Management, Inc. and M.M. Administrators Corp. in the State of Texas [emphasis added].

This injunction is, in fact, not limited to the use of the information obtained from MMI as a result of the contractual relations between the parties. Consequently, we modify the order to restrain solicitation of only those customers so obtained.

Even so, Keystone would argue that no injunction is proper because, unless prohibited by a valid contract or in the absence of a covenant not to compete, even a former employee is permitted to sell to customers of his late employer in competition with him and that, where the customer lists are not trade secrets, the former employee may legitimately compete with his former employer for the customers, citing *Gaal v. BASF Wyandotte Corp.*, 533 S.W.2d 152, 155 (Tex.Civ.App.—Houston [14th Dist.] 1976, no writ.)

This injunction, as modified, does not prohibit Keystone from competing with MMI; it merely prohibits Keystone from soliciting customers whose names were obtained through the allegedly confidential customer list. Furthermore, the reliance on *Gaal* is misplaced because in that case the customer lists were held to be confidential to the extent that they were obtained as a result of the defendant's employment, but not otherwise. *Gaal*, 533 S.W.2d at 154–55.

■ Lastly, Keystone contends that the order of temporary injunction fails to adequately set forth the reasons why injury will be suffered if interlocutory relief is not granted. To be sufficient, the court must give "the reasons why the court believes the applicant's probable right will be endangered if the writ does not issue." *Transport Co. of Texas v. Robertson Transports, Inc.*, 152 Tex. 551, 261 S.W.2d 549, 552 (1953). The trial court's order states: "Plaintiffs [MMI] have also demonstrated that if defendant is not enjoined from such conduct plaintiffs will probably be irreparably injured, without adequate remedy at law, by the loss of the benefit of such trade secrets, a portion of their business." MMI's evidence supports this rea-

son and we find this statement to be sufficient.

Accordingly, the order is modified by restraining solicitation of only those customers whose identities are available to Keystone through information Keystone obtained during its relationship with MMI, and as modified is affirmed.

GUILLOT, J., dissents.

GUILLOT, Justice, dissenting.

I respectfully dissent on the ground that the evidence does not support a probable right of recovery, and, therefore, the court abused its discretion in granting a temporary injunction. To obtain a temporary injunction, MMI must establish a cause of action and a probable right of recovery. *Sun Oil Company v. Whitaker*, 424 S.W.2d 216 (Tex.1968). To establish a probable right of recovery MMI must show that Keystone misappropriated a trade secret and that irreparable harm would come to it if a temporary injunction were not issued. The alleged trade secret in this case is a customer list—names and addresses if you will—that both Keystone and MMI contractually agreed to share, that neither party restricted the other in its use of, and that was readily obtainable by others in the same business. The alleged misappropriation did not result from a breach of confidence or from some other impropriety, but from a cessation of contractual relations between two independent contractors, Keystone and MMI. The alleged irreparable injury is simply the loss of insurance premiums, and that is compensable by a suit for damages.

The majority does not give the specific evidence that it claims supports a probable right of recovery. There is, however, sufficient evidence to refuse the granting of an injunction. To begin with, we must take the parties as we find them, viz., independent parties formerly bound by a contract. The record shows that the contract did not refer to the customer list as confidential, did not restrict Keystone's access to the list, and did not restrict Keystone's use of the list. The contract does not establish—

either explicitly or by implication of law—a confidential relationship between the parties. It does, however, establish that they are independent contractors. It reads:

The parties are independent contractors with respect to each other. Nothing in this Agreement shall create or be construed to create the relationship of employer and employee, principal and agent or partners or joint venturers.

In short, there is no evidence that the parties had a confidential relationship or treated the customer list as a trade secret.

The absence in the contract of an agreement restricting disclosure of information and the absence of an agreement to preserve confidential information are factors courts can consider in determining whether to grant temporary injunctions based on alleged misappropriations of trade secrets. *See Daily International Sales Corp. v. Eastman Whipstock, Inc.*, 662 S.W.2d 60, 63 (Tex.Civ.App.—Houston [1st Dist.] 1983, no writ). Moreover, the owner of the alleged trade secret must perform some affirmative act to protect himself and must make the "disclosee" aware of the confidential nature of the secret and of his duty to keep it confidential. *Furr's, Inc. v. United Specialty Advertising Co.*, 385 S.W.2d 456, 459 (Tex.Civ.App.—El Paso 1964, writ ref'd n.r.e.), *cert. denied*, 382 U.S. 824, 86 S.Ct. 59, 15 L.Ed.2d 71 (1965). There is no evidence of the confidential nature of the customer list, no evidence that it was treated confidentially by the partners, and no evidence that MMI told Keystone to keep the list confidential. Thus, MMI has not established that it has a cause of action and a probable right of recovery for misappropriation of a trade secret. I would hold that no injunction should have been issued.