

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-16-00651-CV

**L.D. BRINKMAN INVESTMENT CORPORATION**, L.D. Brinkman Jr.,
Pamela Brinkman Stone and Charles Thomas,
Appellants

v.

Kathleen Sparrow **BRINKMAN**, Individually and
as Executor of the Estate of Lloyd D. Brinkman, Deceased,
Appellee

From the 198th Judicial District Court, Kerr County, Texas
Trial Court No. 16331B
Honorable Rex Emerson, Judge Presiding

Opinion by:    Rebeca C. Martinez, Justice

Sitting:    Sandee Bryan Marion, Chief Justice
Rebeca C. Martinez, Justice
Patricia O. Alvarez, Justice

Delivered and Filed:  April 26, 2017

AFFIRMED

This is an accelerated appeal of an order granting a temporary injunction.  L.D. Brinkman

Investment Corporation ("LDBIC"),[1] L.D. Brinkman, Jr. ("Don"), Pamela Brinkman Stone

("Pam"), and Charles Thomas assert Kathleen Sparrow Brinkman, individually and as executor of

---

[1] On November 4, 2016, John W. Carlson filed a notice of substitution as lead counsel for LDBIC.  By order dated November 21, 2016, this court noted the trial court denied the motion to substitute filed by Carlson in the trial court, and the order instructed the clerk of the court to disregard the notice of substitution.  On November 23, 2016, Carlson filed a notice of appearance on behalf of LDBIC.  Pending before this court is appellants' motion to strike the notice of appearance.  For the reasons stated in our prior order dated November 21, 2016, we instruct the clerk of the court to disregard the notice of appearance.  Appellants' motion to strike is denied as moot.

the Estate of Lloyd D. Brinkman, deceased, lacked standing to pursue her claims; therefore, the trial court lacked jurisdiction to grant the temporary injunction. The appellants alternatively contend the trial court erred in granting the temporary injunction because: (1) the trial court misapplied the law in concluding Kathleen is the sole director and officer of LDBIC and its subsidiaries; (2) no evidence was presented to establish a probable right to relief on Kathleen's pleaded claims; (3) no evidence was presented to establish an irreparable injury; (4) the temporary injunction failed to preserve the status quo; and (5) the trial court misapplied the law in denying appellants' request for a jury trial on the disputed facts at issue at the temporary injunction hearing. We hold Kathleen has standing to pursue her claims and affirm the trial court's order.

### BACKGROUND

Lloyd D. Brinkman ("Brink") formed LDBIC in 1977. When Brink died on July 4, 2015, he owned 1,000 shares of LDBIC's Series A Preferred Stock, which were devised to his wife Kathleen in his will. Pam and Don each own 5,000 shares of LDBIC's common stock.[2] The holder of each share of Series A Preferred Stock is entitled to eleven votes per share, while the holder of each share of common stock is entitled to one vote per share.

At the time of his death, Brink was the sole director of LDBIC and its chairman of the board, chief executive officer, president, and treasurer. Thomas began working with Brink in 1983, and was the only other elected officer of LDBIC when Brink died, serving as its executive vice-president, secretary, and assistant treasurer. At that time, LDBIC was a holding company owning approximately $80 million in non-revenue producing assets, including an art collection worth approximately $40 million, a mansion in Kerrville, Texas that housed the art collection, a house in Cabo San Lucas, Mexico, 200 acres of undeveloped land in Kerrville, and an airplane.

---

[2] Although the common stock was held in trusts at the time of Brink's death, the trusts were terminated on February 3, 2016, and the stock was distributed to Pam and Don.

Because the assets were non-revenue producing, LDBIC was not profitable. For three to four years before Brink's death, Brink, Pam, Don, and Thomas were working on a concept for a new pizza restaurant tailored on LDBIC's past success as the owner of a successful pizza franchise which LDBIC sold in 2004.

LDBIC had the right to redeem the Series A Preferred Stock for $1,000 upon reasonable notice. It was generally understood that the Series A Preferred Stock would be redeemed upon Brink's death. After Brink's death, Kathleen began negotiating with Pam, Don, and Thomas regarding the terms pursuant to which she would consent to the redemption.

On February 3, 2016, Thomas sent Kathleen's attorney a notice signed in his capacity as an officer of LDBIC, stating LDBIC had redeemed the Series A Preferred Stock. That same day, Pam and Don elected themselves as LDBIC's directors and, as directors, elected Pam as president, Don as treasurer, and Thomas as executive vice-president, secretary, and assistant treasurer. Upon receiving notice of the redemption, Kathleen filed a lawsuit in Dallas County. After LDBIC, Pam, Don, and Thomas filed the underlying lawsuit in Kerr County, Kathleen nonsuited the lawsuit in Dallas County and filed a counterclaim in the underlying lawsuit seeking declaratory relief, including a declaration that the redemption of the Series A Preferred Stock was void.

Kathleen noticed a special shareholders' meeting for February 22, 2016, at which she elected herself as the sole director of LDBIC, and, as director, she also elected herself as LDBIC's sole officer. Neither Pam nor Don attended the shareholders' meeting.

On July 28, 2016, the trial court signed an order granting a partial summary judgment in favor of Kathleen, declaring the redemption void and declaring Kathleen's status and rights as the owner and holder of the Series A Preferred Stock remained as those status and rights existed immediately prior to the invalid redemption. Kathleen noticed another special shareholders' meeting for August 12, 2016, at which she again elected herself as the sole director of LDBIC and,

as director, elected herself as LDBIC's sole officer. Neither Pam nor Don attended the shareholders' meeting.

On September 22, 2016, the trial court held a hearing on Kathleen's application for a temporary injunction and subsequently signed an order granting the temporary injunction. On October 4, 2016, the trial court signed an amended order granting the temporary injunction, and this appeal ensued.

## STANDING

For the first time in their reply brief, the appellants assert Kathleen lacks standing to pursue the "two claims upon which the trial court's temporary injunction order was based: corporate waste and Appellants' refusal to recognize Appellee's invalid elections of herself as LDBIC's sole officer and director." The appellants contend Kathleen lacks standing as a shareholder to assert the claim for corporate waste because that claim belongs to the corporation. Although appellants acknowledge Kathleen also asserted a claim based on the appellants' refusal to recognize her as LDBIC's sole officer and director, they contend the only damage attributable to that claim is "the alleged corporate waste [that] wouldn't have happened had she been in control of LDBIC."

"[S]tanding is a component of subject matter jurisdiction and absent jurisdiction, a court cannot address the merits of a case." *RSL Funding, LLC v. Pippins*, 499 S.W.3d 423, 429 (Tex. 2016). Standing may be challenged for the first time on appeal. *Id.*

"'In Texas, the standing doctrine requires a concrete injury to the plaintiff and a real controversy between the parties that will be resolved by the court.'" *Linegar v. DLA Piper LLP (US)*, 495 S.W.3d 276, 279 (Tex. 2016) (quoting *Heckman v. Williamson Cty.*, 369 S.W.3d 137, 154–55 (Tex. 2012)). "'The plaintiff must be personally injured—he must plead facts demonstrating that he, himself (rather than a third party or the public at large) suffered the injury.'"

*Id.* In addition, "'the plaintiff's alleged injury [must] be likely to be redressed by the requested relief.'" *Id.*

In support of their argument, the appellants rely on *Wingate v. Hajdik*, 795 S.W.2d 717 (Tex. 1990). In *Linegar*, the Texas Supreme Court explained its holding in *Wingate* as it related to stockholder standing, describing the general rule as follows:

> In *Wingate*, we stated the general rule that "[a] corporate stockholder cannot recover damages personally for a wrong done solely to the corporation, even though he may be injured by that wrong." We clarified that the general rule does not preclude a stockholder from recovering damages for wrongs done to the stockholder individually, provided the wrongdoer violated a duty "'owing directly by [the wrongdoer] to the stockholder.'" "However, to recover individually, a stockholder must prove a personal cause of action and personal injury."

495 S.W.3d at 279-80 (internal citations omitted).

The appellants' argument that Kathleen lacks standing is premised on the manner in which the appellants describe Kathleen's claims or causes of action. Because we disagree with this description, we reject appellants' argument.

In her application, Kathleen incorporates her original counterclaim and supplemental counterclaim by reference which seek various declarations, including a declaration that the redemption of her stock was void and that she validly elected herself as the sole director and officer of LDBIC. As the holder of the Series A Preferred Stock, Kathleen had standing to bring both of these claims because they affected her personal rights. The wrongful redemption of Kathleen's stock was a personal injury to Kathleen. With regard to Kathleen's claim seeking a declaration that she validly elected herself as the sole director and officer of LDBIC, Kathleen's pleading makes reference to the actions appellants had taken with regard to LDBIC's assets, which she does describe as wasting LDBIC's assets. Kathleen's claim, however, is based on her personal rights as LDBIC's sole director and officer, and the appellants' refusal to recognize those rights by their taking actions on behalf of LDBIC, including lending $1.8 million to Pam and Don. Because

Kathleen has asserted claims for wrongs done to her individually, we hold Kathleen has standing to pursue her claims.

## JURY TRIAL

In their fifth issue, the appellants contend the trial court misapplied the law in denying their request for a jury trial on the disputed facts at issue at the temporary injunction hearing. We disagree.

In *Miller v. Stout*, 706 S.W.2d 785, 787 (Tex. App.—San Antonio 1986, no writ), this court was "unwilling to extend the right to a jury to preliminary and incidental proceedings which do not involve the question of liability," noting "[o]nly ultimate issues of fact are to be submitted to a jury." We reasoned, "[l]itigation would be interminably prolonged if all issues of fact which might arise in connection with preliminary motions and motions not involving the merits must, at the demand of a party, be determined by a jury." *Id.*

The purpose of a temporary injunction is to preserve the status quo of the litigation's subject matter pending a trial on the merits. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002). A temporary injunction does not involve the merits of the case. *See Davis v. Huey*, 571 S.W.2d 859, 861 (Tex. 1978). Because a temporary injunction does not involve the merits of a case, appellants were not entitled to a jury trial on Kathleen's application for a temporary injunction. *See Miller*, 706 S.W.2d at 787; *see also Ross v. Sims*, No. 03-16-00179-CV, 2017 WL 672458, at *7 (Tex. App.—Austin Feb. 15, 2017, no. pet.) (mem. op.) ("And, regardless of his demand for a jury trial, he was not entitled to one as to the application for a temporary injunction."); *Loomis Int'l, Inc. v. Rathburn*, 698 S.W.2d 465, 468 (Tex. App.—Corpus Christi 1985, no writ) (noting "there is no right to a jury at a hearing on [an] application for temporary injunction"); *Walling v. Kimbrough*, 365 S.W.2d 941, 943 (Tex. Civ. App.—Eastland), *aff'd*, 371 S.W.2d 691 (Tex. 1963) ("No jury may be demanded at a hearing for a temporary injunction.").

Our holding that the appellants were not entitled to a jury trial at the hearing on the temporary injunction is consistent with the applicable standard of review. We review the granting of a temporary injunction under an abuse of discretion standard. *Butnaru*, 84 S.W.3d at 204. Under an abuse of discretion standard, the "resolution of factual issues or matters [are] committed to the trial court's discretion" and cannot be reversed on appeal unless "shown to be arbitrary or unreasonable." *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex. 1992). Therefore, the appellants' contention that they are entitled to a jury trial on disputed fact issues at the temporary injunction hearing is also contrary to the applicable standard of review.

Appellants' fifth issue is overruled.

### PROBABLE RIGHT TO RELIEF SOUGHT; IRREPARABLE INJURY

In their second and third issues, appellants contend the trial court abused its discretion in finding Kathleen established a probable right to the relief sought and irreparable injury.

A.   Elements of a Temporary Injunction and Standard of Review

"To obtain a temporary injunction, the applicant must plead and prove three specific elements: (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim." *Butnaru*, 84 S.W.3d at 204. As previously noted, we review a trial court's decision to grant a temporary injunction under an abuse of discretion standard. *Id*.

With respect to questions of fact, "[a]n abuse of discretion does not exist where the trial court bases its decisions on conflicting evidence." *Davis*, 571 S.W.2d at 862. Instead, the trial court abuses its discretion only if the record establishes it "could reasonably have reached only one decision," and it failed to do so. *Walker*, 827 S.W.2d at 840. However, "[a] trial court has no 'discretion' in determining what the law is or applying the law to the facts. Thus, a clear failure

by the trial court to analyze or apply the law correctly will constitute an abuse of discretion." *Id*. at 840.

> B.      Probable Right to the Relief Sought

At a temporary injunction hearing, the applicant is not required to present the underlying merits of the controversy or to establish the applicant will ultimately prevail. *See Camp Mystic, Inc. v. Eastland*, 399 S.W.3d 266, 272-73 (Tex. App.—San Antonio 2012, no pet.); *LasikPlus of Tex., P.C. v. Mattioli*, 418 S.W.3d 210, 216 (Tex. App.—Houston [14th Dist.] 2013, no pet.); *City of Dall. v. Brown*, 373 S.W.3d 204, 208 (Tex. App.—Dallas 2012, pet. denied); *Miller Paper Co. v. Roberts Paper Co.*, 901 S.W.2d 593, 597 (Tex. App.—Amarillo 1995, no writ.). Instead, the applicant must show a probability of success by presenting evidence which tends to sustain the cause of action. *See LasikPlus of Tex., P.C.*, 418 S.W.3d at 216; *City of Dall.*, 373 S.W.3d at 208; *Miller Paper Co.*, 901 S.W.2d at 597.

Similar to their argument relating to standing, the appellants attempt to limit the causes of action pled by Kathleen and contend she must establish a probable right to recover on a corporate waste claim. As we previously noted, however, Kathleen asserted multiple declaratory judgment claims in her pleadings seeking a variety of declarations, including a declaration that the redemption of her stock was void and that she validly elected herself as the sole director and officer of LDBIC.

> 1.      Declaration that Redemption was Void

With regard to Kathleen's claim for a declaration that the redemption of her stock was void, we hold she satisfied her burden to establish a probable right to recover on that claim. The evidence showed LDBIC's articles of incorporation gave the corporation the option to redeem the Series A Preferred Stock. The evidence further established Thomas signed the notice of redemption in his capacities as executive vice-president and secretary. A corporation's redemption

of its own shares, however, must be authorized by the corporation's board of directors. *See* TEX. BUS. ORGS. CODE ANN. § 21.002(6)(A)(ii), 21.302 (West 2012). Brink was LDBIC's sole director upon his death. Therefore, until a shareholders' meeting was noticed and a new director or board of directors was elected, LDBIC could not authorize the redemption of Kathleen's shares. We note our holding is consistent with the partial summary judgment granted in Kathleen's favor.

2.    Declaration that Kathleen is LDBIC's Sole Director and Officer

We next turn to Kathleen's claim for a declaration that she validly elected herself as the sole director and officer of LDBIC. In their first issue, the appellants specifically challenge the portion of the trial court's order enjoining them from denying Kathleen's authority as the sole director and office of LDBIC, asserting the trial court misapplied the law in finding Kathleen is the sole director and officer of LDBIC.

Whether Kathleen established a probable right to the relief sought on her claim that she is the validly elected sole director and officer of LDBIC turns on an issue of statutory construction which is a legal question. *See Hebner v. Reddy*, 498 S.W.3d 37, 41 (Tex. 2016). "Our objective in construing a statute is to give effect to the Legislature's intent, which requires us to first look to the statute's plain language." *Lippincott v. Whisenhunt*, 462 S.W.3d 507, 509 (Tex. 2015). "If that language is unambiguous, we interpret the statute according to its plain meaning." *Id*. "We presume the Legislature included each word in the statute for a purpose." *Id*. As previously noted, "a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion." *Walker*, 827 S.W.2d at 840.

In this case, the parties agree a special meeting of the shareholders to elect a director or board of directors to replace Brink could be called by the holders of ten percent of all of the shares entitled to vote at the meeting and that the holders of a majority of the shares entitled to vote at the meeting constituted a quorum. *See* TEX. BUS. ORGS. CODE ANN. §§ 21.352, 21.358. The parties

disagree, however, on whether section 21.366(b) of the Texas Business Organizations Code modifies the references to the specified portion of the shares such that the number of votes per share is considered rather than simply the number of shares.

Section 21.366(b) provides:

> If the certificate of formation provides for more or less than one vote per share on a matter for all of the outstanding shares or for the shares of a class or series, each reference in this code or in the certificate of formation or bylaws, unless expressly stated otherwise, to a specified portion of the shares with respect to that matter refers to the portion of the votes entitled to be cast with respect to those shares under the certificate of formation.

*Id*. at § 21.366(b). All parties agree LDBIC's articles of incorporation provide the Series A Preferred Stock would have more than one vote per share. Specifically, the articles of incorporation state, "Each such holder of [the Series A Preferred Stock] shall be entitled to eleven votes per share." Under section 21.366(b), each reference to a "specified portion of the shares" with respect to "a matter for all of the outstanding shares" "refers to the portion of the votes entitled to be cast with respect to those shares under the certificate of formation." *Id*. Therefore, the references to the portion of the shares required to call a special meeting or to constitute a quorum "refers to the portion of the votes entitled to be cast with respect to those shares." *Id*. Accordingly, under the plain meaning of the statute, a special meeting may be called by the holders of shares representing ten percent of the votes entitled to be cast and the holders of shares representing a majority of the votes to be cast constitutes a quorum.[3]

Under Brink's will, Kathleen was devised the 1,000 shares of Series A Preferred Stock, giving her 11,000 votes. The common stock owned by Pam and Don gave them 10,000 votes. Because Kathleen's shares represented more than ten percent of the votes entitled to be cast, she

---

[3] In their briefing, the appellants emphasize LDBIC's bylaws; however, section 21.366(b) applies to "each reference in this code or in the certificate of formation or ***bylaws***." *Id*. at § 21.366(b) (emphasis added).

was entitled to call a special meeting. In addition, because Kathleen's shares represented a majority of the votes to be cast, a quorum was present at the meetings she called on February 22, 2016, and August 12, 2016. Accordingly, we hold Kathleen also established a probable right to the relief sought on her claim seeking a declaration that she was validly elected as LDBIC's sole director and officer.

The appellants' first and second issues are overruled.

### C. Irreparable Injury

In their third issue, the appellants contend the trial court abused its discretion in finding Kathleen established a probable, imminent, and irreparable injury. "An injury is irreparable if the injured party cannot be adequately compensated in damages or if the damages cannot be measured by any certain pecuniary standard." *Butnaru*, 84 S.W.3d at 204.

At the temporary injunction hearing, evidence was presented to show: (1) Pam and Don held a shareholders meeting and purported to elect themselves as directors and officers even though they do not own shares representing a majority of the votes entitled to be cast at a shareholders' meeting and, therefore, no quorum was present at the meeting: (2) Pam and Don's salaries were each raised from $12,000 a year to $200,000 a year; (3) LDBIC paid Thomas a cash bonus of $300,000 on April 28, 2016; (4) LDBIC made Pam a $300,000 loan on February 26, 2016, and a $1,000,000 loan on August 12, 2016; and (5) LDBIC made Don an $800,000 loan on August 12, 2016. Although the appellants assert Kathleen failed to specifically reference each of these facts in her pleadings, Kathleen's pleadings alleged an irreparable injury based on the appellants' refusal to recognize the validity of her election as LDBIC's sole director and officer. Therefore, Kathleen was entitled to present evidence in support of that pleading at the hearing, including evidence of the actions taken by Pam, Don, and Thomas on behalf of the corporation in derogation of Kathleen's status. *See Roark v. Allen*, 633 S.W.2d 804, 809 (Tex. 1982) (noting pleadings are

"liberally construed in favor of the pleader" and provide sufficient notice if the opposing party has "information sufficient to enable him to prepare a defense"); *Bowen v. Robinson*, 227 S.W.3d 86, 91 (Tex. App.—Houston [1st Dist.] 2006, pet. denied) ("The object and purpose of pleading is to give fair and adequate notice to the party being sued of the nature of the cause of action asserted against him."). In addition to the evidence of the specific corporate actions taken, it was within the trial court's discretion to infer the evidence established an intent by Pam, Don, and Thomas to continue to operate LDBIC in derogation of Kathleen's rights as the sole director and officer. And, the damage caused by the appellants continuing to take action in derogation of Kathleen's rights cannot be measured by any certain pecuniary standard. Therefore, we hold the trial court did not abuse its discretion in finding Kathleen established a probable, imminent, and irreparable injury. The appellants' third issue is overruled.

## STATUS QUO

In their fourth issue, the appellants contend the trial court abused its discretion because its order failed to maintain the status quo.

As previously noted, the purpose of a temporary injunction is to preserve the status quo of the litigation's subject matter pending a trial on the merits. *Butnaru*, 84 S.W.3d at 204. The status quo is defined as the last, actual, peaceable, non-contested status which preceded the pending controversy. *In re Newton*, 146 S.W.3d 648, 651 (Tex. 2004).

In their brief, the appellants contend the status quo required the company to be operated as it was on the day before the attempted redemption, meaning Thomas, Pam and Don would continue to run LDBIC. We disagree. The trial court found the status quo to be preserved was "that which existed immediately prior to the attempted redemption." Prior to the attempted redemption, Kathleen was the holder of the 1,000 shares of the Series A Preferred Stock and was entitled to exercise her rights as the holder of those shares. Although the parties were attempting to negotiate

terms to redeem the shares, the parties acknowledged Kathleen's ownership of those shares, and the parties' negotiations did not preclude Kathleen from exercising her rights as a shareholder. Because Kathleen was entitled to exercise her rights as a shareholder on the day before the attempted redemption, we hold Kathleen's exercise of those rights is consistent with the status quo. *See Universal Health Servs., Inc. v. Thompson*, 24 S.W.3d 570, 577 (Tex. App.—Austin 2000, no pet.) (noting status quo is relationship between parties as it existed prior to the action attempting to alter that relationship).

## CONCLUSION

The trial court's order is affirmed.

Rebeca C. Martinez, Justice