ACCEPTED
05-15-00444-CV
FIFTH COURT OF APPEALS
DALLAS, TEXAS
8/3/2015 4:42:36 PM
LISA MATZ
CLERK

## CASE NO. 05-15-00444-CV

_____

<table>
<tr><td>In the Court of Appeals<br>for the Fifth District of Texas<br>Dallas, Texas</td><td>FILED IN<br>5th COURT OF APPEALS<br>DALLAS, TEXAS<br><br>8/3/2015 4:42:36 PM<br><br>LISA MATZ<br>Clerk</td></tr>
</table>

_____

## BRADLEY B. MILLER
Appellant,

## v.

## TALLEY DUNN GALLERY, LLC AND TALLEY DUNN
Appellees.

_____

Interlocutory Appeal from the 191st District Court,
Dallas County, Texas

_____

## BRIEF OF APPELLEES
## TALLEY DUNN GALLERY, LLC AND TALLEY DUNN

_____

Dan Hartsfield
State Bar No. 09170800
Talley Parker
State Bar No. 2406065872
Jackson Lewis P.C.
500 North Akard, Suite 2500
Dallas, TX 75201
Tel 214 520-2400
Fax 214 520- 2008

ATTORNEYS FOR APPELLEES

i

# TABLE OF CONTENTS

I. STATEMENT OF THE CASE ......................................................................8

II. STATEMENT REGARDING ORAL ARGUMENT............................................8

III. ISSUES PRESENTED...............................................................................8

IV. STATEMENT OF FACTS ..........................................................................9

V. PROCEDURAL BACKGROUND.................................................................20

VI. SUMMARY OF ARGUMENT....................................................................20

VII. ARGUMENT ......................................................................................21

    A. The District Court Properly Entered A Temporary Injunction
       Against Appellant ...........................................................................21

          1. ISSUE 1: Injunction No. 7 is Not an Unlawful Prior
             Restraint of Speech.................................................................22

          2. ISSUE 2: The Temporary Injunction Complies with
             Tex. R. Civ. P. 683 .................................................................26

          3. ISSUE 3: Appellees Offered Evidence of Irreparable Harm
             and No Adequate Remedy at Law...........................................28

          4. ISSUE 4: Appellees Offered Evidence Establishing a Probably
             Right to Recover....................................................................32

              a. Misappropriation and/or Disclosure of Trade Secrets..............33

              b. Tortious Interference with Business Relations .........................37

                 1) The Evidence Confirms Appellant's Tortious
                    Interference with Existing Relationships........................37

                 2) The Evidence Confirms Appellant's Tortious
                    Interference with Prospective Relationships ...................42

    c.  Harmful Access by Computer Violation ...................................45

    d.  Texas Wiretapping Violation.......................................................46

    e.  Defamation and Business Disparagement ................................46

    f.  Invasion of Privacy ....................................................................48

B.  The District Court's Award of Attorneys' Fees For Appellant's
Motion to Dismiss Should Not Be Set Aside ...................................50

    1.  ISSUE 5: The Trial Court Did Not Abuse its Discretion When
It Determined that Plaintiff's Motion was Frivolous and
Awarded Fees ..........................................................................50

    2.  Appellant Waved Any Right to Appeal the Order Denying
The Motion to Dismiss ..........................................................53

VIII. PRAYER ...............................................................................................54

CERTIFICATE OF COMPLIANCE.....................................................................55

CERTIFICATE OF SERVICE ..............................................................................55

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Alamo Lumber Co. v. Fahrenthold,*
58 S.W.2d 1085 (Tex. Civ. App.—Beaumont 1933, writ ref'd) ........................30

*Alcatel USA, Inc. v. DGI Tech.,*
166 F.3d 772 (5th Cir. 1999) .................................................................34

*Amalgamated Acme Affiliates, Inc., v. Minton,*
33 S.W.3d 387 (Tex. App.—Austin 2000, no pet.)............................................25

*AMF Tuboscope v. McBryde,*
618 S.W.2d 105 (Tex.Civ.App.—Corpus Christi 1981, writ ref'd n.r.e.) ..........29

*Avera v. Clark Moulding,*
791 S.W.2d 144 (Tex. App.—Dallas 1990, no writ)..............................................33

*Bank of Sw. v. Harlingen Nat'l Bank,*
662 S.W.2d 113 (Tex.App.—Corpus Christi 1983, no writ) .............................31

*Birnbaum v. Law Offices of G. David Westfall,*
120 S.W.3d 470, 477 (Tex. App.—Dallas 2003, pet. denied)............................53

*Blanche v. First Nationwide Mortg. Corp.,*
74 S.W.3d 444 (Tex. App.—Dallas 2002, no pet.) ............................................48

*Butnuru v. Ford Motor Co.,*
8 S.W.3d 198 (Tex. 2002)...................................................................22

*Camp v. Shannon,*
162 Tex. 515, 348 S.W.2d 517 (Tex. 1961) .......................................................32

*Clayton v. Richards,*
47 S.W.3d 149 (Tex. App.—Texarkana 2001, pet. denied)................................48

*Cohn v. Comm'n for Lawyer Discipline,*
979 S.W.2d 694 (Tex. App.—Houston [14th Dist.] 1998, no pet.) ...................23

*Collins v. Collins*,
904 S.W.2d 792 (Tex. App.-Houston [1st Dist.] 1995), *writ denied per curiam*, 923 S.W.2d 569 (Tex. 1996) ................................................................48

*Collins v. Ryon's Saddle & Ranch Supplies, Inc.*,
576 S.W.2d 914 (Tex. Civ. App.—Fort Worth 1979, no writ) .........................45

*Cottingham v. Engler*,
178 S.W.2d 148 (Tex. Civ. App.—Dallas 1944, no writ) ..................................45

*David v. Bache Halsey Stuart Shields, Inc.*,
630 S.W.2d 754,756-57 (Tex.App.—Houston [1st Dist.] 1982, no writ)..........25

*EMS USA, Inc. v. Shary*,
309 S.W.3d 653 (Tex. App.—Houston [14th Dist.] 2010, no pet.) ...................21

*EMSL Analytical, Inc. v. Younker*,
154 S.W.3d 693 (Tex. App.—Houston [14th Dist.] 2004, no pet.) ...................33

*Forbes Inc. v. Granada Biosciences, Inc.*,
124 S.W.3d 167, 47 Tex. Sup. Ct. J. 162 (Tex. 2003) .......................................47

*Frequent Flyer Depot, Inc. v. Am. Airlines, Inc.*,
281 S.W.3d 215 (Tex. App.—Fort Worth 2009, pet. denied), *cert. denied*,
130 S. Ct. 2061, 176 L. Ed. 2d 414 (U.S. 2010)................................................31

*Garth v. Stacte Corp.*,
876 S.W.2d 545 (Tex. App.—Austin 1994, writ dism'd w.o.j.) ........................28

*Gillen v. Diadrill, Inc.*,
624 S.W. 2d 259 (Tex. App.—Corpus Christi 1981, no writ) ...........................28

*Glenn v. Gidel*,
496 S.W.2d 692 (Tex. Civ. App.—Amarillo 1973, no writ).............................46

*Hancock v. Variyam*,
400 S.W.3d 59 (Tex. 2013)...............................................................................43

*Home Sav. of Am. v. Van Cleave Dev. Co.*,
737 S.W.2d 58 (Tex. App.—San Antonio 1987, no writ)................................21

*Hurlbut v. Gulf Atl. Life Ins. Co.*,
749 S.W.2d 762, 31 Tex. Sup. Ct. J. 144 (Tex. 1987) ......................................47

*IAC, Ltd. v. Bell Helicopter Textron, Inc.*,
160 S.W.3d 191 (Tex. App.—Fort Worth 2005, no pet.)..............................32, 35

*In re N.E.B.*,
251 S.W.3d 211 (Tex. App.—Dallas 2008, no pet.) ...........................................53

*In re Newton*,
146 S.W.3d 648 (Tex. 2004) ............................................................................21

*Intercontinental Termians Co., LLC. v. N. Am., Inc.*,
354 S.W. 3d 887 (Tex. App.—Houston [1st Dist.] 2011, no pet.)....................28

*Karamchandani v. Ground Tech., Inc.*,
678 S.W.2d 580 (Tex. App.—Houston [14th Dist.] 1984, no writ)...................25

*Keystone Life Ins. v. Mktg. Mgmt.*,
687 S.W.2d 89 (Tex. App.—Dallas 1985, no writ)................................27, 29, 47

*Levine v. Steve Scharn Custom Homes, Inc.*,
448 S.W.3d 637 (Tex. App.—Houston [1st Dist.] 2014, pet. denied) ...............44

*Lifeguard Benefit Servs v. Direct Med Network Solutions, Inc.*,
308 S.W.3d 102 (Tex. App.—Fort Worth 2010, no pet.)..............................30, 31

*Main v. Royall*,
348 S.W.3d 318 (Tex. App.—Dallas 2011, no pet.) .....................................40, 44

*Marketshare Telecom, L.L.C. v. Ericsson, Inc.*,
198 S.W.3d 908 (Tex. App.—Dallas 2006, no pet.) ..........................................24

*Martin v. Linen Sys. for Hosp., Inc.*,
671 S.W. 2d 706 (Tex. App.—Houston [1st Dist.] 1984, no writ) ....................27

*McIntyre v. Wilson*,
50 S.W.3d 674 (Tex. App.—Dallas 2001, pet. denied)......................................53

*N.Y. Times v. Sullivan*,
376 U.S. 254 (1964)...........................................................................................51

*Owens v. State*,
820 S.W.2d 912 (Tex. App.—Houston [1st Dist.] 1991, pet. ref'd)...................25

*Pickens v. Cordia*,
 433 S.W.3d 179 (Tex. App.—Dallas 2014, no pet.) ............................................51

*Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.*,
 29 S.W.3d 74 (Tex. 2000) ....................................................................................37

*RenewData Corp. v. Strickler*,
 No. 03-05-00273-CV, 2006 Tex. App. LEXIS 1689, 2006 WL 504998
 (Tex. App.—Austin Mar. 3, 2006, no pet.) (mem. op.) ......................................31

*Rugen v. Interactive Bus. Sys.*,
 864 S.W.2d 548 (Tex. App.—Dallas 1993, no writ) ...........................................26

*Sharma v. Vinmar Int'l Ltd*,
 231 S.W.3d 405 427 (Tex. App.—Houston [14th Dist.] 2007, no pet.) ............31

*State v. Cook United, Inc.*,
 464 S.W. 2d 105 (Tex. 1971) ...............................................................................26

*Sterner v. Marathon Oil Co.*,
 767 S.W.2d 686 (Tex. 1989) ................................................................................42

*Sullivan v. Bickel & Brewer*,
 943 S.W.2d 477 (Tex. App.—Dallas 1995, writ denied) .....................................54

*Sun Oil Co. v. Whitaker*,
 424 S.W. 2d 216 (Tex. 1968) ...............................................................................21

*Surko v. Borg-Warner*,
 782 S.W.2d 223 (Tex. App.—Houston [1st Dist.] 1989, no writ) ......................32

*T-N-T Motorsports v. Hennessey*,
 965 S.W.2d 18 (Tex. App.—Houston [1st Dist.] 1998, pet. dismissed) ......31, 32

*Tex. Dep't of Transp. v. Barber*,
 111 S.W. 3d 86 (Tex. 2003)..................................................................................25

*Tex. Disposal Sys. Landfill, Inc. v. Waste Mgmt. Holdings, Inc.*,
 219 S.W.3d 563 (Tex. App.—Austin 2007, pet. denied) ....................................43

*Townson v. Liming*,
 No. 06-10-00027-CV, 2010 Tex. App. LEXIS 5459, 2010 WL 2767984
 (Tex. App.—Texarkana July 14, 2010, no pet.) (mem. op.) ...............................31

*Transperfect Translations, Inc. v. Leslie*,
  594 F. Supp. 2d 742 (S.D. Tex. 2009)................................................................30

*Walling v. Metcalfe*,
  863 S.W. 2d 56 (Tex. 1993).............................................................................29

*WFAA-TV, Inc. v. McLemore*,
  978 S.W.2d 568 (Tex. 1998) ...........................................................................46

*Wright v. Sport Supply Grp., Inc.*,
  137 S.W.3d 289 (Tex. App.—Beaumont 2004, no pet.) ...................................32

**STATUTES**

TEX. CIV. PRAC. & REM. CODE § 10.002........................................................53

TEX. CIV. PRAC. & REM. CODE § 27.003(a) ..................................................50

TEX. CIV. PRAC. & REM. CODE § 73.001......................................40, 43, 44

TEX. CIV. PRAC. & REM. CODE § 143.001......................................................45

TEX. PENAL CODE § 31.05(b)(3)......................................................................40

TEX. PENAL CODE § 33.01(11) ........................................................................17

TEX. PENAL CODE § 33.02 ...............................................................................17

TEX. PENAL CODE §§ 37.02, 37.03 .................................................................40

**OTHER AUTHORITIES**

TEX. R. CIV. P. 38.1 ........................................................................................53

TEX. R. CIV. P. 683...................................................................................*passim*

## I. STATEMENT OF THE CASE

Appellees Talley Dunn Gallery, LLC and Talley Dunn filed the underlying proceeding on February 11, 2015 to stop her ex-husband's harassment and attempts to destroy her business by disseminating confidential information about the Gallery and interfering with her business relationships with artists, clients, and employees. The District Court entered a Temporary Restraining Order in favor of Dunn on February 11, 2015 and, after an agreed extension of the TRO, the District Court presided over the temporary injunction hearing on March 2, 4, and 12, 2015. After the three-day hearing, the District Court determined that Appellees had satisfied the prerequisites for a temporary injunction and on March 19, 2015 entered a temporary injunction to maintain the *status quo* until a trial on the merits, which the District Court set for February 1, 2016.

## II. STATEMENT REGARDING ORAL ARGUMENT

If the Court grants Appellant's request for oral argument, the Gallery and Dunn request the opportunity to respond with oral argument to the Court. Otherwise, Appellees believe this appeal can be decided on the record.

## III. ISSUES PRESENTED

1. Was it an abuse of discretion to enjoin Appellant from republishing false, misleading, and defamatory statements to known clients of the Gallery?

2. Did the Temporary Injunction entered by Judge Ted M. Akin, presiding for the 191st Judicial District Court, satisfy the specificity requirements of TEX. R. CIV. P. 683?

3. Did the District Court abuse its discretion when it found Appellees would suffer irreparable harm without an adequate remedy at law absent the temporary injunction?

4. Did the District Court abuse its discretion when it found Appellees had a probable right to relief with respect on their claims for misappropriation under the Texas Uniform Trade Secrets Act (Count I), tortious interference with business relations (Count II), harmful access by computer (Count III), unlawful wiretapping (Count IV), defamation and business disparagement (Count VI), and invasion of privacy (Count VII)?

5. Did the District Court abuse its discretion when it awarded attorneys' fees to Appellees in opposing Appellant's frivolous Motion to Dismiss?

## IV.   STATEMENT OF FACTS

1. Appellee Dunn owns and operates the Talley Dunn Gallery, L.L.C. (Gallery). She has been a practicing and successful art dealer in Dallas, Texas since 1990 (3 R.R. 87; C.R. 28.) Over her 24+ year career, Dunn has built long-term relationships with prominent and leading artists, collectors, curators, critics, educators, and arts patrons and earned a reputation for honesty, integrity and

9

business ethics. (3 R.R. 94-97; 99; C.R. 107, ¶ 4.05.) Dunn's reputation for honesty and integrity is one of the most critical aspects of operating the Gallery. (3 R.R. 106-108.)

2. In marketing, exhibiting, and selling art, Appellees have expended substantial time, labor, and money to develop these business relationships. (C.R. 107, ¶ 4.06.) Client lists, purchase history, and pricing information are confidential, including the Appellees' general ledgers that compile such information (Confidential Information). (*Id.*) This Confidential Information is neither available to nor known by the general public or competing art galleries. (3 R.R. 140-141; 166-167.) The Gallery has taken substantial measures to prevent its Confidential Information from becoming publicly available. (3 R.R. 140-141; 3 R.R. 166-167; C.R. 107, ¶ 4.06.)

3. Appellant was married to Dunn until divorced in April 2014. (C.R. 29, 2 R.R. 30.) During their divorce proceeding, Miller gained access to the Gallery's confidential general ledger for the period from January 2, 2013 through October 24, 2013 (the General Ledger). (C.R. 108, ¶ 4.08, 5 R.R. Ex. 18;) The General Ledger was produced in confidence and for the limited purpose of settlement negotiations. (C.R. 29, 113-116; 2 R.R. 70-71.) Absent the divorce proceedings, Appellant would not have access to the General Ledger. (*Id.*) The General Ledger included private and confidential information about every vendor, client, and artist

10

that worked with the Gallery, including discounts offered to clients, sales pricing, commissions paid to individual artists, and profit margins. (*Id.*; C.R. 29-30, 2 R.R. 90-91; 3 R.R. 140-141, 180-181.) Appellant conceded that the General Ledger included customer names, listed business transactions between the Gallery and customers, and contained information not publicly available. (2 R.R. 83, 90.) Unauthorized disclosure of the Confidential Information could be both detrimental to, and used to the competitive disadvantage of, Dunn and the Gallery. (3 R.R. 140-141.) The General Ledger is password protected and accessible by only one Gallery employee. (3 R.R. 142.)

4.      Appellant used the General Ledger to identify Gallery clients and artists, to interfere with their existing and prospective business relationships with the Gallery, and to persuade these clients or artists to cease doing business with the Gallery. (C.R. 29, 110, ¶ 4.12.)

5.      For example, by email dated December 5, 2014, Appellant used information from the General Ledger to identify and contact an important Gallery client and blame the client's artwork purchases from the Gallery for Appellant's 91-year-old father being hospitalized. (5 R.R., Ex. 10.) Appellant accompanied the email harangue with a photograph of his ill father in ICU, stating:

Please take a look at the attached Talley Dunn Gallery Ledger, which Talley produced in discovery. Your name is prominently featured (on 6/21/13,

7/2/13, 8/5/13, 9/4/13, 10/2/13). Then take a look at the attached photo of my father in the Presbyterian ICU. <u>That's what you –personally—were funding.</u>

(5 R.R., Ex. 10; C.R. 109, ¶ 4.12.) Appellant admitted he was aware that this individual was a client of the Gallery only because "I had noticed on the ledger that her name was listed as having made payments to the gallery. . ." (3 R.R. 31, 53.)

6. Appellant also used the General Ledger to identify David Haemisegger—co-owner of NorthPark mall and a Director of the Nasher Museum—as another important client of the Gallery. (2 R.R. 131-132.) Armed with his misappropriated information, Appellant emailed Haemisegger and accused Dunn of committing a criminal act. (2 R.R. 53, 99-100, 5 R.R. Ex. 3.) To Haemisegger and others, Defendant has repeatedly published that Dunn committed "perjury" in an affidavit and testimony (e.g., "lying in court," a "lie-filled battle," "lies she repeated in court," "making false claims of violence," "was shown to be lying in court," "repeated these lies in court in our first full hearing . . . and in subsequent hearings," "lies and other fraudulent actions," "lies to the Court about the Gallery income," "obvious perjury," "false TRO affidavits," a "false" affidavit" with "fabricated allegations of violence," "outright lies," "distortions and outright lies," "pervasive lies" or "grotesquely fabricated claims."). Dunn confirmed her sworn prior statements were true and correct. (3 R.R. 112-116.)

7.     The false, misleading and defamatory statements published to the Gallery's customers were made with the intent to end or otherwise interfere with those commercial relationships. (C.R. 34, ¶¶13-14; 3 R.R. 111.) Publishing the Gallery's Confidential Information threatens to impair the Gallery's business particularly with those clients who do not wish for their private information to be disseminated or made public. (C.R. 30.) Appellant has interfered and impaired the goodwill that Dunn and the Gallery have spent the last 24 years building in the Dallas arts community. (3 R.R. 171.)

8.     Appellant also intentionally interfered, without privilege or justification, with the Gallery's artist relationships. (3 R.R. 199, C.R. 110, ¶ 4.13.) The Gallery exhibits and sells contemporary art by established artists pursuant to consignment agreements between the artists and the Gallery. (3 R.R. 100-103.) Appellant sent letters, emails and other materials to these artists represented to disrupt or impair consignment agreements. (C.R. 109, ¶ 4.12.)

9.     David Bates is the Gallery's most important artist. (3 R.R. 145.) Armed with misappropriated financial information from the General Ledger, Appellant sent a letter to Bates before a scheduled exhibition of his art at the Gallery and again alleged a causal connection between his father's heart attack and the Gallery's sale of Bates's artwork. (2 R.R. 49, 110, 5 R.R. Ex. 2; 2 R.R. 115.)

13

Your art is providing most of the funding for the continuing legal onslaught of the past year and the massive harm it has caused my family. . .That is very clear from looking at the gallery ledger.

Appellant warned Bates that going through with his upcoming show at the Gallery could provide sufficient "financial ammunition" to continue so-called attacks. (2 R.R. 118.) Following receipt of that letter from Appellant, Dunn's relationship with Bates changed. (3 R.R. 152.)

10. In other efforts to destroy the Gallery's relationship with Bates, Appellant has repeatedly published statements that imply or insinuate that Dunn engaged in sexual misconduct, marital infidelity or adultery (e.g., "romantic text messages"). (3 R.R. 7-8, 5 R.R. Ex. 2 and 7.) Under cross-examination, Miller backpedaled saying that "I think she was [lying] to cover up a crush [on David Bates] or something like that. I don't think it was any more than that." (2 R.R. 127-128.) Appellant conceded that he published statements accusing Dunn of sexual misconduct based on nothing more than his perception of a "constellation of things" in Dunn's behavior. (2 R.R. 11.) Dunn testified unequivocally that she has never engaged in any sexual misconduct, marital infidelity or adultery. (3 R.R. 127-128.)

11. Appellant also emailed Gallery artists Matthew Sontheimer and Trent Hancock alleging sexual misconduct between Dunn and Bates. (2 R.R. 61-62; 3

R.R. 6, Ex. 7.) These allegations of impropriety harm Dunn's reputation and threaten the Gallery's relationship with its other artists. (3 R.R. 162-163.) In fact, Hancock and another artist did, in fact, leave the Gallery following Appellant's interference. (3 R.R. 171; 200-201.)

12. Appellant also targeted the Gallery's employment relationships. The Gallery hires employees to exhibit and sell contemporary art. (C.R. 28.) Appellant sent letters and other materials to Beth Taylor, the Director of the Gallery, and to the parents of Meredith Leyendecker, another Gallery employee, in an effort to disrupt or destroy the employment relationship. (2 R.R. 133, 5 R.R. Ex. 4, 2 R.R. 135, 5 R.R. Ex. 5, C.R. 118, ¶ 4.14.) These acts intentionally interfered, without privilege or justification, with the employment relationships that exist between the Gallery and its employees. (*Id.*)

13. Appellant published these false and misleading letters, emails and other verbal and written statements intending to end or prevent business relationships from continuing with customers, artists, or employees. The communications declare or suggest that Dunn is dishonest, a swindler, scam artist, a criminal, untrustworthy, perjurer, pathological liar, sociopath, psychopath, borderline and narcissist. (3 R.R. 34-35; 5 R.R. Ex. 2-10.) Appellant also distributed false and misleading letters and emails characterizing Dunn as an adulterer and associated Dunn with criminal conduct involving fraud, pedophilia,

battery, sexual assault, and child abuse. (*Id.*) Dunn could not maintain the Gallery if she developed the reputation alleged by Appellant. (3 R.R. 108.)

14. In reference to a former business partner, Defendant has repeatedly and falsely published that a former business partner of Dunn was cheated "out of the gallery without any compensation" or "with no compensation for the business itself." (3 R.R. 19.) Defendant has repeatedly published that Plaintiff Dunn was dishonest about her former business partner (e.g., Dunn is "lying" or "spreading lies" about a former business partner or "Talley's lies" or "lied to me extensively about her business partner" or "lying about this episode and other alleged stealing"). (5 R.R. Ex. 3, Ex. 4; C.R. 125-128.) Appellant admitted at the hearing that the business partner did, in fact, receive compensation from Dunn. (3 R.R. 20-21.) Likewise, Dunn testified confirmed the partnership was divided equitably and in half. (3 R.R. 91-92.)

15. In reference to Dunn's mental health, Appellant has repeatedly and falsely published that she suffers from personality or mental disorders (e.g., "sociopath," "sociopathy," "sociopathic behavior," "psychopath," "psychopathy," "narcissist," "malignant narcissist," "personality disorder," "serial abuser," or "borderline"). (C.R. 124, ¶¶ 10.04-10.06; 3 R.R. 25-26, 41, 5 R.R. Ex. 6, 7, 8, Ex. 12; C.R. 125-128.)

16. Appellant has also publicly associated Dunn with sexual and child abuse and domestic violence, comparing her to "Bill Cosby," "Penn State," "Adrian Peterson" or "Ray Rice." (3 R.R. 27, 35; C.R. 125-128.)

17. Often attached or enclosed with Appellant's tortious communications with customers, artists, and employees were audio recordings of Dunn or pictures of text messages from Dunn's personal cellphone. (*See* 5 R.R. Ex. 2, 4, 5, 7, and 10; C.R. 33.) For over two years, from January 2012 through April 2014, Appellant surreptitiously recorded Plaintiff's private conversations, both in her home and in her car, and accessed her private emails, text messages, voice messages, call logs and telephone records without her consent. (2 R.R. 64; C.R. 32-33; C.R. ¶¶ 11.02-11.07.)

18. Without authorization from Dunn and while she was sleeping, Appellant accessed Dunn's smart phone and computerized data as defined in Section 33.01(11) of the Texas Penal Code and in violation of Section 33.02 of the Texas Penal Code. (2 R.R. 125-126, 5 R.R. Ex. 2.) Appellant then disseminated and published the data wrongfully obtained. (*See* 5 R.R. Ex. 2, 4, 5, 7, and 10.) Appellant concedes that the phone was password protected. (3 R.R. 67.) Dunn did not give Appellant permission to access her phone, e-mails, voicemails, text messages, or call logs. (3 R.R. 129.)

19. Over a period of several months, Appellant also concealed a digital recorder in Dunn's car. (2 R.R. 65; C.R. 32-33, ¶ ¶11-12.) Appellee recorded conversations that Dunn had with third parties while driving. (2 R.R. 65). In doing so, Appellant intercepted and acquired the contents of Dunn's communications through the use of the digital recorder without the consent of any party to the communication. (*Id.*) Dunn discovered a log maintained by Appellant in which he meticulously tracked her daily movements, conversations, emails, and text messages for over a year prior to their divorce. (3 R.R. 132-133.) In that log, Dunn observed notations of recordings made by Appellant of Dunn in her car when Appellant was not present. (3 R.R. 133-134, 5 R.R. Ex. 15; C.R. 33.) Appellant clarified that he did not know what happened to the unlawful recordings he had surreptitiously made. (2 R.R. 66.)

20. Appellant's wrongful conduct is damaging the Gallery's good will, business relationships, Dunn's reputation, and is harming her business and health. (C.R. 110, 112 ¶¶ 4.13, 4.19.) Dunn has suffered emotional distress, lost artists, and endured loss of reputation, shame, embarrassment as well as injury to her good name and reputation. (C.R. 130, ¶ 10.13.)

21. Without Dunn, the Gallery has no value. (3 R.R. 106.) Appellant knows that Dunn suffers from multiple sclerosis. (3 R.R. 37-38.) Dunn testified and Appellant admits that stress causes symptom flare-ups for Dunn. (3 R.R. 38,

138.) Appellant has even contacted Dunn's treating physicians to disparage her, attack her character and integrity, and provide them with the Gallery's General Ledger. (C.R. 111, ¶ 4.17; 6 R.R. Ex. 12-13.)  As a result, Dunn's MS has flared up over the course of Appellant's systemic and constant harassment. (3 R.R. 171.)

22.    Appellant is attempting to destroy Dunn's business. (3 R.R. 111, 185, C.R. 30.)  If not stopped, Appellant will continue those attempts.  (3 R.R. 111, 139.)

23.    Dunn testified that damages to her person and her business are not easily calculated, quantified or ascertained.  (C.R. 23 ¶¶10.03.)  Two artists have been lost.  (3 R.R. 171; 200-201.)  Her relationship with the Gallery's key artist David Bates has been impaired. (3 R.R. 152.) Dunn testified that it was impossible to value the goodwill associated with the Gallery. (3 R.R. 106.) It is difficult to assess the damage done to this goodwill, the harm caused by the loss of the confidentiality of her business dealings with artists and clients or even identify those customers who have refrained from further dealings with the Gallery. (*Id*.) The full extent of Dunn's and the Gallery's damages are unknown.  (C.R. 129, ¶ 10.12.)

24.    Even if damages could be sufficiently quantified and calculated, Appellant lacks the financial resources to provide adequate relief or respond in monetary damages.  (*Id*.).

25. Appellant's own ballpark estimate of the Gallery's value is in excess of $4.5 million. (2 R.R. 109-110, 5 R.R., Ex. 2). Appellant admitted that he is in financial distress. His only income is as an "IT Consultant" for which he had earned approximately $30,000 in 2014. (2 R.R. 32-33.) He admitted that as of last year, he was deeply in debt and living with his parents because he could not afford a place of his own. (5 R.R., Ex. 2.) Appellant has no ability to pay damages if he continues to attack the Gallery and Dunn.

## V. PROCEDURAL BACKGROUND

The District Court entered a TRO against Appellants on February 11, 2015. (C.R. 36-40.) After an agreed extension of the TRO, the District Court held a temporary injunction hearing on March 2, 4, and 12. (1 R.R. 1-9.) Both Miller and Dunn testified at the hearing and documents were introduced as exhibits for the District Court's review. (*Id*). After the three-day hearing, the District Court granted Appellees' request for a temporary injunction. (C.R.250-263.) In this appeal, Appellant launches an across-the-board attack on the equitable grief granted to Appellees.

## VI. SUMMARY OF ARGUMENT

The District Court correctly found that Appellees met the prerequisites for a temporary injunction. The District Court's narrowly tailored restrictions on are based on the evidence presented at the temporary injunction hearing. The 14 page

Temporary Injunction Order painstakingly describes the acts to be enjoined and why a temporary injunction is required, thus satisfying the specificity requirements of Rule 683. Finally, Appellees demonstrated irreparable harm, no adequate remedy at law, and probable recovery on the merits on their claims.

Nor did Judge Aiken abuse his discretion in determining that Appellant's Motion to Dismiss under the Texas Citizens Participation Act (TCPA) was frivolous and without evidentiary support.

## VII.   ARGUMENT

### A.   The District Court Properly Entered a Temporary Injunction Against Appellant.

In temporary injunction cases, the question on appeal is whether the trial court abused its discretion. *Sun Oil Co. v. Whitaker*, 424 S.W. 2d 216, 218 (Tex. 1968). All legitimate inferences from the evidence are drawn in the light most favorable to the trial court's decision. *EMS USA, Inc. v. Shary*, 309 S.W.3d 653, 657 (Tex. App.—Houston [14th Dist.] 2010, no pet.). So long as some evidence supports the court's decision, there is no abuse of discretion. *Id*.

A temporary injunction preserves the status quo or prevents irreparable injury pending final determination on the merits. *In re Newton*, 146 S.W.3d 648, 651 (Tex. 2004). To obtain a temporary injunction, Appellees were not required to establish they will ultimately prevail at trial. *Home Sav. of Am. v. Van Cleave Dev. Co.*, 737 S.W.2d 58, 60 (Tex. App.—San Antonio 1987, no writ). Rather,

Appellees must establish (1) a cause of action against Appellant, (2) a probable right to relief, and (3) irreparable injury. *Butnuru v. Ford Motor Co.*, 8 S.W.3d 198, 204 (Tex. 2002). The District Court's finding that Appellees satisfied these elements is supported by the record.

1.   **ISSUE 1: Injunction No. 7 is Not an Unlawful Prior Restraint of Speech**

The Court issued a narrowly tailored injunction that enjoined Appellant in Injunction No. 7 from communicating to persons *known to him* to be clients or customers of the Gallery three very specific statements: that Dunn (a) committed perjury in the divorce proceedings between Dunn and Appellant; (b) committed sexual misconduct or adultery while married to Appellant; and/or (c) forced her former business partner out of the gallery "without any compensation."   (, C.R. 261, ¶ 7.)[1]

The District Court found that the previously published statements were false and defamatory and the injunction was limited to the repetition of the same false and misleading communications:

(a)   **Perjury:** The District Court found that Appellant had "repeatedly published that Dunn committed 'perjury' in connection with an affidavit and her

---

[1] Reflecting its careful tailoring, the Temporary Injunction, in paragraph 8, confirms that Appellant is not restricted from speaking on these matters to any board members or parents of The Hockaday School (where Appellant's child attends) even if they are known clients or customers of the Gallery.

testimony" in the parties' divorce proceeding. (Temporary Injunction ¶ 12, C.R. 255). The District Court found "these publications to be false, misleading and defamatory." (*Id.* at C.R. 256.) The evidence supports these findings. (Statement of Facts § 6.)

Dunn testified that her sworn statements in the divorce proceedings were true and correct. (*Id.*) Dunn testified about Appellee's violent outbursts, and his denials do not warrant reversal. Where there is conflicting testimony, the trial court is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Cohn v. Commission for Lawyer Discipline*, 979 S.W.2d 694, 696 (Tex. App.—Houston [14th Dist.] 1998, no pet.).

(b) **Adultery:** The District Court found that Miller had "repeatedly published statements that imply or insinuate that Dunn engaged in sexual misconduct or…adultery." (Temporary Injunction ¶ 14, C.R. 256-257.) The District Court found "these publications are false, misleading, and defamatory." (*Id.* at C.R. 256.) The evidence supported this finding. (Statement of Facts ¶ 10.) At the temporary injunction hearing, Appellant even admitted that he lacked not only proof of adultery but even a good faith belief of an affair, conceding his suspicion to be only of a "crush!" (Statement of Facts ¶ 10.) In contrast, Dunn was unequivocal in her denial of any infidelity, adultery, or other sexual misconduct. (*Id.*)

23

(c)  **Business Partner:** The District Court found that Appellant "has repeatedly published that the former business partner was cheated 'out of the gallery without any compensation.'"  (Temporary Injunction ¶ 13, 256.)  The District Court found "these publications are false, misleading and defamatory." (*Id*.)  The evidence supported this finding. (Statement of Facts ¶ 15.)  Appellant conceded that the business partner did, in fact, receive substantial compensation, and Dunn testified that the partnership was divided in half. (*Id*.)

Dunn also offered evidence that these false, misleading and defamatory statements published to the Gallery's customers and artists were made by Appellant with the intent to disrupt or interfere with those business relationships. (Statement of Facts ¶ 7.) The District Court heard testimony that if not enjoined, Appellant would continue to interfere with and attempt to destroy her business. (Statement of Facts ¶ 22.)  Because Appellees have established the threat of irreparable harm (see below) and no less restrictive means to prevent the continuing harm are available, Appellees were entitled to a narrowly tailored injunction, enjoining Appellant from repeating those false, misleading, and defamatory statements.

Appellees recognize that a judicial order forbidding repetition of certain defamatory speech constitutes a prior restraint. *Marketshare Telecom, L.L.C. v. Ericsson, Inc*., 198 S.W.3d 908, 917 (Tex. App.—Dallas 2006, no. pet.), *citing*

*Alexander v. United States*, 509 U.S. 544, 550 (1993). But the "First Amendment does not guarantee the right to communicate one's views at all times and places or in any manner." *Tex. Dep't of Transp. v. Barber*, 111 S.W. 3d 86, 92 (Tex. 2003).

In the present case, Appellant's defamatory speech also constituted commercial speech. Prior restraints are permissible when the enjoined speech constitutes commercial speech. *Amalgamated Acme Affiliates, Inc., v. Minton*, 33 S.W.3d 387 (Tex. App.—Austin 2000, no pet.); *Karamchandani v. Ground Technology, Inc.*, 678 S.W.2d 580 (Tex. App.—Houston [14th Dist.] 1984, no writ). *See also Owens v. State*, 820 S.W.2d 912, 914 (Tex. App.—Houston [1st Dist.] 1991, pet. ref'd) (holding that "[i]ntentionally false or misleading statements made in a commercial context are not protected").

In *Amalgamated Acme*, because the defendants' statements were "intended to end contractual relationships between [the plaintiff] and his customers, or to prevent contractual relationships with potential customers," the appellate court agreed that it was commercial speech. *Id*. at 394. Justice Bea Ann Smith explained that "to enjoy any protection, commercial speech must not be false or misleading." *Id*. Because the defendant's speech was both false and misleading, the appellate court held that the trial court properly enjoined defendants from making in the future the same communications the plaintiff proved it had made in

the past. *Id.* Specifically, in relevant part, the appellate court upheld an injunction commanding the defendant to refrain from:

> (a) communicating to the . . . any businesses known to be a customer of Dean Allen, and/or any businesses known to be a potential customer of Dean Allen (including all employees and agents of all of the foregoing businesses) that Dean Allen or Minton has committed fraud, made misrepresentations, engaged in a scam, engaged in unfair competition, hurt the Austin Independent School District, hurt the University of Texas, hurt any other customer, violated any contract or agreement, or violated any law;

> (b) communicating to the advertisers on Exhibit A . . . that Dean Allen or Minton has committed fraud, made misrepresentations, engaged in a scam, engaged in unfair competition, hurt the Austin Independent School District, hurt the University of Texas, hurt any other customer, violated any contract or agreement, or violated any law.

A similar temporary injunction is justified here.

2. **ISSUE 2: The Temporary Injunction Complies with TEX. R. CIV. P. 683.**

Rule 683 requires a trial court to describe the acts to be enjoined and the reasons for issuing the injunction. *See State v. Cook United, Inc.*, 464 S.W. 2d 105 (Tex. 1971). "The rule's purpose is to ensure that parties are adequately informed of the acts they are enjoined from doing and the reasons for the injunction." *Rugen v. Interactive Business Sys.*, 864 S.W.2d 548, 553 (Tex. App.—Dallas 1993, no writ).

The District Court's Order meets these requirements. The Order details in eight paragraphs – and over four pages - the specific acts to be enjoined. There is

little, if any, ambiguity about what Appellant is enjoined from doing. Its prohibitions are limited to preventing the recurrence of the abusive and harassing conduct previously committed by Appellant. The injunction adequately informs him of the acts that he is enjoined from doing.

The reasons for the injunction are self-evident on its face. The District Court explains that the injunction is issued because of the Appellant's "wrongful, damaging conduct." This conduct is described in 17 paragraphs, describing tortious (and criminal) behavior that "has occurred and will continue to occur if not enjoined." As summarized in Paragraph 18, the Court explained that the wrongful conduct has occurred and will continue to threaten Dunn's health, reputation, and the goodwill of the Gallery and that the status quo would not be maintained absent the injunction. (C.R. 250, ¶ 18.) Reading all 14 pages of the District Court's Temporary Injunction confirms that it adequately describes what is enjoined and why in order to comply with Rule 683.

Judge Aiken's findings are far more specific than others found to be sufficient. For example, in *Keystone Life Ins. v. Marketing Management*, 687 S.W.2d 89, 93 (Tex. App.—Dallas 1985, no writ), the appellate court found this statement to be sufficient: "Plaintiffs have also demonstrated that if defendant is not enjoined from such conduct plaintiffs will probably be irreparably injured, without adequate remedy at law, by the loss of the benefit of such trade secrets, a

portion of their business." *Id. See also Martin v. Linen Systems for Hospitals, Inc.*, 671 S.W. 2d 706, 711 (Tex. App.—Houston [1st Dist.] 1984, no writ)(statement that injunction was necessary to protect "goodwill and business" and that moving party would be harmed without injunction is complies with Rule 683); *Gillen v. Diadrill, Inc.*, 624 S.W. 2d 259 (Tex. App.—Corpus Christi 1981, no writ)(statement that moving party "will probably sustain irreparable injury and damage to its business" if allowed to continue to engage in behavior is "sufficient compliance" with Rule 683). Here, the District Court's Order complies with Rule 683.

3. **ISSUE 3: Appellees Offered Evidence of Irreparable Harm and No Adequate Remedy at Law.**

Appellant argues, without explanation, that any evidence of harm is rebutted by the *de minimus* gap between his escalating misconduct in mid-December 2014 and the filing of Appellees' Petition and the issuance of the TRO on February 11, 2015. However, "Texas case law does not prevent injunctive relief merely because a potential plaintiff did not file a claim as quickly as possible." *Garth v. Stacte Corp.*, 876 S.W.2d 545, 550-551 (Tex. App.—Austin 1994, writ dism'd w.o.j.)(nine month delay no bar to recovery). This is especially true when, as here, the misconduct and harm is ongoing and continuing. *See Intercontinental Termians Company, LLC. v. North America, Inc.*, 354 S.W. 3d 887, 894 (Tex. App.—Houston [1st Dist.] 2011, no pet.)

Appellant next claims that Appellees have not identified an injury that cannot be computed with a sufficient degree of certainty. Brief at 25. The testimony confirmed that Appellant published and misused the confidential General Ledger to persuade clients and artists to cease doing business with the Gallery. (C.R. 29, 110, ¶ 4.12). The misuse of confidential information to interfere with business relationships has been recognized as a ground for injunctive relief due to the difficulty of establishing the amount of damages. *Keystone Life Ins.*, 687 S.W.2d at 92; *see also David v. Bache Halsey Stuart Shields, Inc.*, 630 S.W.2d 754,756-57 (Tex.App.—Houston [1st Dist.] 1982, no writ) ("One cannot assign a dollar value to a company's loss of clientele, goodwill, office stability. . . ."); *see AMF Tuboscope v. McBryde*, 618 S.W.2d 105, 108 (Tex.Civ.App.— Corpus Christi 1981, writ ref'd n.r.e.). Likewise, the loss or disruption of a business is the type of injury that qualifies for a temporary injunction. *Walling v. Metcalfe*, 863 S.W. 2d 56, 58 (Tex. 1993).

There is also a presumption of irreparable harm associated with business loss and damage to good will. Appellees did not simply rely on this presumption, but also offered evidence that Appellees suffered irreparable harm. Due to Appellant's wrongful conduct, the Gallery faced the possible loss of customers, artists, and employees in addition to the damage to goodwill. (*See* Statement of Facts ¶¶ 4-12.) Contemporaneous with Appellant's onslaught, two artists left the gallery.

Dunn also testified to the threat of customers discontinuing business with the Gallery for fear that their private information would become public. (*See* Statement of Facts. ¶¶ 7, 9, 11). Dunn likewise testified that she could not remain in business if the disparagement peddled by the Appellant was believed, and her reputation for honesty, integrity and fair dealing was destroyed by Appellant. (*See* Statement of Facts ¶ 13.) This evidence is sufficient to demonstrate irreparable harm. *See Transperfect Translations, Inc. v. Leslie*, 594 F. Supp. 2d 742, 757 (S.D. Tex. 2009)(holding that the "use of an employer's confidential information and the possible loss of customers is sufficient to establish irreparable harm.")

Appellant's wrongful conduct jeopardized the goodwill of the Gallery. (Statement of Facts ¶¶ 7, 20.) Texas law has long recognized that goodwill, although intangible, is valuable property and an integral part of one's business. *Alamo Lumber Co. v. Fahrenthold*, 58 S.W.2d 1085, 1088 (Tex. Civ. App.—Beaumont 1933, writ ref'd). Threatened injury to a business's reputation and good will is frequently the basis for temporary injunctive relief. *Id.* Dunn also testified that she could not quantify the Gallery's goodwill. (*Id.* at ¶ 23.). Thus, the irreparable injury requirement is satisfied when injuries of this nature are, like established here, difficult to calculate or monetize. *Intercontinental Terminals Co., LLC v. Vopak N. Am., Inc.*, 354 S.W.3d 887, 895-896 (Tex. App.—Houston 1st

Dist. 2011)(trial court did not abuse its discretion in granting temporary injunction order).[2]

Dunn and the Gallery face irreparable harm, including the loss of business, good will, employees, and reputation for which there is no adequate remedy at law. *See Sharma v. Vinmar Int'l Ltd*, 231 S.W.3d 405, 427 (Tex. App. –Houston [14th Dist.] 2007, no pet.); *T-N-T Motorsports v. Hennessey,* 965 S.W.2d 18, 24 (Tex. App. –Houston [1st Dist.] 1998, pet. dismissed). Because there is little, if any, value to the Gallery without Dunn at its helm, irreparable harm is likewise established by the harm and threats of more harm to Dunn's mental well-being and physical health. (Statement of Facts ¶ 21.) [3]

---

[2] *See also Lifeguard Benefit Servs v. Direct Med Network Solutions, Inc.,* 308 S.W.3d 102, 118 (Tex. App.—Fort Worth 2010, no pet.); *Frequent Flyer Depot, Inc. v. Am. Airlines, Inc.,* 281 S.W.3d 215, 228 (Tex. App.—Fort Worth 2009, pet. denied), *cert. denied*, 130 S. Ct. 2061, 176 L. Ed. 2d 414 (U.S. 2010) ("Disruption to a business can be irreparable harm. Moreover, assigning a dollar amount to such intangibles as a company's loss of clientele, goodwill, marketing techniques, and office stability, among others, is not easy."); *T-N-T Motorsports*, 965 S.W.2d at 24 (affirming temporary injunction based on testimony that lost goodwill would be "immeasurable"); *Townson v. Liming*, No. 06-10-00027-CV, 2010 Tex. App. LEXIS 5459, 2010 WL 2767984, at *2-3 (Tex. App.—Texarkana July 14, 2010, no pet.) (mem. op.)( "The value of lost patients, lost business contacts and collaborations, and lost hospital privileges are anything but fixed, settled, and indisputable. Rather, by their very nature, it is likely that Liming might never even be aware of specific patients and business  contacts lost."); *RenewData Corp. v. Strickler*, No. 03-05-00273-CV, 2006 Tex. App. LEXIS 1689, 2006 WL 504998, at *15-16 (Tex. App.—Austin Mar. 3, 2006, no pet.) (mem. op.)("Because it is difficult to assign a dollar value to loss of customer goodwill and clientele, it constitutes an irreparable injury.") (citing *Graham v. Mary Kay, Inc.*, 25 S.W.3d 749, 753 (Tex. App.—Houston [14th Dist.] 2000, pet. denied.).

[3] At the hearing on Appellant's Motion to Dismiss, his counsel confirmed that "[m]uch of the facts here are not in dispute in terms of what was said, what was done. The dispute is whether it was lawful or not..." Judge Aiken responded that "I have a pretty…difficult time saying that what your client has done should be lawful, it seems to me, at least that they're all true, that they're pretty outrageous. . ." (Record, Vol. 1, 88.)

Evidence was also presented that irreparable harm existed because Appellant cannot respond in damages. He concedes that there is no adequate remedy at law if the defendant is incapable of responding in damages. *See* Brief at 25; *Bank of Southwest v. Harlingen Nat'l Bank*, 662 S.W.2d 113, 116 (Tex.App.—Corpus Christi 1983, no writ). Evidence that a defendant is in financial distress and cannot respond in damages is sufficient evidence to support injunctive relief. *Surko v. Borg-Warner*, 782 S.W.2d 223 (Tex. App.—Houston [1st Dist.] 1989, no writ).

The only evidence in the record demonstrates that Appellant is deeply in debt with limited, if any, income or other resources and could not adequately respond in damages. (Statement of Facts ¶¶ 25-26.) Appellant valued the Gallery in excess of $4.5 million based on revenue, not including Dunn's and the Gallery's goodwill or the injury to Dunn's health and reputation. (*See* Statement of Facts ¶¶ 22-23.) Given that he is without assets, has a negative net worth, and earns no more than $30,000 per year, Appellant is incapable of responding in damages. (*Id.*)

4.   **ISSUE 4: <u>Appellees Offered Evidence Establishing a Probable Right to Recovery</u>**

To show a probable right of recovery, Appellees must plead a cause of action and present evidence that tends to sustain it. *Camp v. Shannon,* 162 Tex. 515, 348 S.W.2d 517, 519 (Tex. 1961); *T-N-T Motorsports*, 965 S.W.2d at 23-24. Under the abuse of discretion standard, the evidence is reviewed in the light most

favorable to the court's ruling and deference is given to the trial court's resolution of conflicting evidence. *See IAC, Ltd. v. Bell Helicopter Textron, Inc.*, 160 S.W.3d 191, 196 (Tex. App.—Fort Worth 2005, no pet.); *Wright v. Sport Supply Grp., Inc.*, 137 S.W.3d 289, 292 (Tex. App.—Beaumont 2004, no pet.). A temporary injunction is not overturned unless the trial court's action was so arbitrary that it exceeded the bounds of reasonable discretion. *EMSL Analytical, Inc. v. Younker*, 154 S.W.3d 693, 696 (Tex. App.—Houston [14th Dist.] 2004, no pet.).

Here, Appellees pled claims for misappropriation under the Texas Uniform Trade Secrets Act (Count I), tortious interference with business relations (Count II), harmful access by computer (Count III), wiretapping violation (Count IV), defamation and business disparagement (Count VI), and invasion of privacy (Count VII). Dunn also presented a claim for intentional infliction of emotional distress (Count VIII). Over the course of three days, Appellees presented evidence to sustain each of these claims. The District Court considered the claims, reviewed the evidence and weighed the credibility of the witnesses and properly found that Appellees established a probable right of recovery.

### a. Misappropriation and/or Disclosure of Trade Secrets.

Appellees established a probable right of recovery for misappropriation and/or disclosure of trade secrets, and the District Court did not abuse its discretion in enjoining Appellant from disclosing Confidential Information. (C.R. 259, ¶ 1.)

Under Texas law, misappropriation is established by showing that a trade secret existed, was acquired through a breach of a confidential relationship or discovered by improper means, and was used without authorization. *Avera v. Clark Moulding*, 791 S.W.2d 144, 145 (Tex. App.—Dallas 1990, no writ); *Alcatel USA, Inc. v. DGI Tech.*, 166 F.3d 772, 784 (5th Cir. 1999). Here, the record reasonably supports the finding of probable recovery.

The evidence established that Appellees spent substantial time, labor and money to develop key business relationships and that the Gallery's client lists, client purchase history, and pricing information is confidential, including the General Ledger. (Statement of Facts ¶ 2.) Appellant acquired the General Ledger during the parties' divorce proceedings for settlement purposes only and subject to a confidentiality order. (Statement of Facts ¶ 3.) Absent this limited purpose, Appellant would not have gained access to the General Ledger (*Id.*) That the confidentiality order was later vacated or modified did not strip the General Ledger of its confidential status or give the Appellant free license to disseminate Gallery trade secrets. (*Id.*)

The evidence showed that the General Ledger was kept in confidence, gave Dunn and the Gallery an advantage over its competitors, and was not publicly available or known. (*Id.*) It included private and confidential business information such as the identity of every vendor, client, and artist that transacted business with

34

the Gallery, including the purchase discounts negotiated with clients, invoice charges and payments made by clients, commissions paid to individual artists, and the Gallery's profit margins. (Statement of Facts ¶ 3.)

There was evidence before the trial court that the Appellant used the General Ledger—knowing that the information was not publicly available— to identify Gallery clients and then target them with outlandish and offensive claims in an effort to disrupt their business dealings with Dunn and the Gallery. The evidence showed that Appellant claimed that client purchases and artist sales had caused his father's heart attack and characterized Dunn was a perjurer, adulterer, and swindler. (Statement of Facts ¶¶ 3-7.) Given these outrageous circumstances, the finding that an injunction should issue to maintain the status quo regarding the General Ledger was not unreasonable.

Appellant first argues that the General Ledger is not a trade secret. In essence, Appellant seeks a resolution on the merits, which is not the purpose of an interlocutory appeal. In determining whether to grant trade secret protection through a temporary injunction, a trial court simply determines whether the information is entitled to trade secret protection pending the trial on the merits. *IAC, Ltd.*, 160 S.W.3d at 196.

Appellant next argues that he did not misappropriate the General Ledger because he obtained it in discovery pursuant to a confidentiality agreement. As set

forth above, Appellant offers no evidence that a trade secret whose production is compelled through discovery somehow loses trade secret protection.

There is, however, evidence that Appellant understood its confidential nature—he acknowledged the information was not readily available to the public—and used that information to Dunn and the Gallery's commercial disadvantage. Although evidence of actual misappropriation was before the trial court, Dunn and the Gallery need not demonstrate before trial on the merits actual misappropriation. Instead, "harm to the trade secret owner may be presumed when a defendant possesses trade secrets and is in a position to use them." *Id.* There is no dispute that Appellant possesses the General Ledger, has used and published its contents in an attempt to harm Dunn and the Gallery, and continues to be in a position to use it for this purpose absent a temporary injunction.

Finally, Appellant argues that temporary relief is not available because he did not *intend* to misappropriate the Gallery's confidential information but rather was simply focused on interfering with Dunn's membership on The Hockaday School Board. Appellant's expressed intent, however, is inconsistent with the evidence. He not only sought to interfere with Dunn's position on The Hockaday School Board but the evidence also shows that he had repetitively misused and broadcasted the Gallery's confidential information, including the entire General Ledger, in order to get artists and clients to cease transacting business with the

Gallery. Given that Appellant does not operate and is not affiliated with another gallery, the evidence showed that his disclosures were not made for the purpose of advancing his own competitive advantage but rather for the sole purpose of causing harm to Dunn and the Gallery.

### b. Tortious Interference with Business Relations.

The evidence also established a probable right to recover for tortious interference. The trial court did not abuse its discretion when it enjoined Appellants in Temporary Injunction ¶¶ 5-6 from interfering with existing or prospective customers, artists, or employees by (a) using Confidential Information; (b) using information obtained in violation of the Texas Harmful Access by Computer Act; (c) using information that Appellant obtained by intercepting private conversations between Dunn and other third parties in Appellant's absence; and/or (d) disclosing surreptitiously recorded conversations that occurred of Dunn in the privacy of her residence. (C.R. 261, ¶¶ 5-6.)

### 1) The Evidence Confirms Appellant's Tortious Interference with Existing Relationships.

The elements of tortious interference with an existing contract are: (1) an existing contract subject to interference; (2) a willful and intentional act of interference with the contract; (3) that proximately caused the plaintiff's injury; and (4) caused actual damages or loss. *See Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.,* 29 S.W.3d 74, 77 (Tex. 2000). Appellees presented evidence of

existing contractual relationships (consignment agreements) with artists such as David Bates, Trent Hancock, and Matthew Sontheimer. (Statement of Facts ¶¶ 8-11.) They also presented evidence of existing at-will employment relationships with employees Beth Taylor, the Gallery Director, and Meredith Leyendecker. (Statement of Facts ¶ 12.)

The evidence showed that Appellant engaged in intentional acts of interference with both artists and Gallery employees. (Statement of Facts ¶¶ 8-12.) Appellant sent a letter to David Bates, the Gallery's key artist, on March 31, 2014. (Statement of Facts ¶¶ 9-10.) Both its context and content prove Appellant's intent to interfere. Appellant timed his missive to arrive in advance of a Bates exhibition scheduled at the Gallery for April 5, 2014. (*Id.*) At this exhibition, Mr. Bates' paintings and sculpture were being offered for sale pursuant to the consignment agreement between Mr. Bates and the Gallery. (*Id.*)

In his letter, Appellant seeks—based on false and misleading statements—to interfere with or terminate the consignment agreement between Mr. Bates and the Gallery by the following argument:

- Dunn is a bad actor who is harming Appellant (*i.e.*, she committed perjury, caused harm and financial ruin to Appellant and his family, and deprived him of his fair share of the Gallery);

- But for the revenue generated from the sale of Mr. Bates' artwork, Dunn would not have the financial ability to inflict this harm;

- Appellant made amends with Lisa Brown, a competitive art consultant, and he encourages Mr. Bates to contact Ms. Brown and "make amends."

The timing and content of this letter evidences an effort to interfere with the upcoming exhibition at the Gallery pursuant to the consignment agreement between Mr. Bates and the Gallery. Its explicit purpose is to disrupt the exhibition and stop the Gallery's sales of Mr. Bates' artwork that he views as funding his misfortune ("[y]our upcoming show could provide enough financial ammunition to continue this attack permanently."). (Statement of Fact, ¶ 9.) He invites the Gallery's key artist to contact a competitive art consultant and "make amends," the clear import being to allow Ms. Brown to sell his art, thus providing evidence for the trial court to issue an injunction prohibiting tortious interference to divert artists to another art dealer. (*Id.*)

With Mr. Bates, Appellant intended to interfere with an existing contractual relationship. While he was unsuccessful at derailing the Bates' exhibition, Dunn testified that since his interference, her relationship with Mr. Bates has materially changed. (Statement of Facts ¶ 10.) No independent tort (or other unlawful act)

39

need be shown to warrant enjoining Appellant from continuing to interfere with the Gallery's existing consignment agreements.

Even if viewed as a prospective business relation, the interference was independently tortious and in violation of law. Appellant used and disclosed confidential financial information (*i.e.*, gross and net gallery revenue). (Statement of Facts ¶ 9.) He relied on the General Ledger – a protected trade secret – to argue that this artist provided "most of the funding" for the "massive harm" to him and his family. (Statement of Facts ¶ 9)("that is very clear from looking at the gallery ledger"). Thus, Defendant violated Section 134A.002(3) of the Texas Uniform Trade Secrets Act (twice) in pursuing this interference.[4]

Next, Appellant claimed that Dunn made "fabricated allegations of violence" in an affidavit submitted in their divorce proceedings and as a result, he suffered "excruciating torture." (Statement of Facts ¶¶ 9.) Appellant accused Dunn of both dishonesty and perjury, a criminal act. *See* Penal Code, §§ 37.02 (Perjury) and 37.03 (Aggravated Perjury). These statements, on their face, tend to injure Dunn's reputation and to impeach her honesty, integrity, virtue, or reputation as provided in Section 73.001 of the Civil Practice and Remedies Code. *See, e.g.*, *Main v. Royall*, 348 S.W.3d 318, 390 (Tex. App.—Dallas 2011, no pet.)

---

[4] Appellant independently violated Section 31.05 of the Penal Code that prohibits one from knowingly communicating or transmitting a trade secret without the owner's effective consent. *See* Texas Penal Code, § 31.05(b)(3). As a third degree felony, this offense qualifies as an "unlawful act" for purposes of a tortious interference with a prospective business relationship.

(unambiguously charging one with a crime or dishonesty is defamatory *per se*). Appellant's attribution of perjury is an accusation of a criminal act and constitutes defamation *per se*.

Appellant's efforts were not limited to Mr. Bates. He targeted other artists as well. Regarding Trent Hancock, the trial court heard evidence that Appellant repeated allegations of dishonesty and perjury to him and alleged that Dunn engaged in infidelity/sexual misconduct, which are not only intentional acts but also constitute defamation *per se*. (Statement of Facts ¶ 11.) In addition, Appellant forwarded to artists, including Trent Hancock, and Gallery employees text messages he obtained in violation of the Texas Harmful Access by Computer Act. (*Id.*)

The trial court heard evidence that after receiving Appellant's defamatory barrage, Hancock discontinued his relationship with the Gallery. (Statement of Fact ¶ 11.)[5] This evidence tends to show that Appellant's tortious interference—whether through the misappropriation of confidential information, defamatory statements, invasions of privacy, or violations of state statute—has disrupted and,

---

[5] Appellant complains that Dunn did not prove that he had successfully caused any artist to terminate a consignment agreement as a result of Appellant's interference. (Brief at 43.) The trial court, however, heard evidence that two Gallery artists terminated their relationships with the Gallery following contact with Appellant. (Statement of Facts ¶ 11.) While Appellant once again focuses on the merits of the litigation and not the limited purpose of maintaining the status quo pending trial, he did not deny contacting these artists, publishing defamatory statements to them, or their termination of their business relationship with the Gallery thereafter.

if not enjoined, will continue to disrupt or impair the Gallery's relationships with artists. (Statement of Fact ¶ 8.)

The evidence also showed that Appellant interfered with the employment relationships between the Gallery and its employees. (Statement of Facts ¶ 12.) Defendant sent a letter, documents, and unauthorized recordings to Beth Taylor, the Gallery Director. (*Id.*) He contacted Taylor for the sole purpose of disrupting the professional relationship that Appellees have had with Taylor for nearly twenty (20) years. (*Id.*) He sent a similar letter to the parents of Meredith Leyendecker, another Gallery employee, soliciting their assistance in persuading Ms. Leyendecker to end her employment at the Gallery. (*Id.*)

An at-will employment agreement can be the subject of a claim of tortious interference with contract. *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 688 (Tex. 1989). Until terminated, the at-will contract is valid and subsisting, and third persons such as the Appellant are not free to tortuously interfere with it. *Id.* Absent an intent to harm Dunn and the Gallery, Appellant has offered no justification for his efforts to cause the termination of the Gallery's employment relationships.

### 2) The Evidence Confirms Appellant's Tortious Interference with Prospective Relationships.

Appellees also submitted evidence establishing the elements of their claims for tortious interference with prospective and continuing business relationships.

42

The elements of this claim are: (1) a reasonable probability that the parties would have entered into a business relationship; (2) an intentional, malicious intervention or an independently tortious or unlawful act performed by the defendant with a conscious desire to prevent the relationship from occurring or with knowledge that the interference was certain or substantially likely to occur as a result of its conduct; (3) a lack of privilege or justification for the defendant's actions; and (4) actual harm or damages suffered by the plaintiff as a result of the defendant's interference. *See Tex. Disposal Systems Landfill, Inc. v. Waste Mgmt. Holdings, Inc.*, 219 S.W.3d 563, 590 (Tex. App.—Austin 2007, pet. denied) (*citing Bradford v. Vento*, 48 S.W.3d 749, 757 (Tex. 2001).

Appellees showed that Appellant's tortious conduct is actionable as defamation, business disparagement, invasion of privacy and intentional infliction of emotional distress. Defamation is generally defined as the invasion of a person's interest in her reputation and good name. *Hancock v. Variyam*, 400 S.W.3d 59, 63-64 (Tex. 2013)(*citing* W. Page Keeton et al., Prosser & Keeton on Torts § 111, at 771 (5th ed. 1984 & Supp. 1988)); *see also* Tex. Civ. Prac. & Rem. Code § 73.001. It is either defamation *per se* or *per quod*. *Id*.

Historically, defamation *per se* has involved statements that are so obviously hurtful to reputation that the jury may presume general damages, including for loss of reputation and mental anguish. Publications are libel *per se* if they include

statements that (1) charge a crime, dishonesty, fraud, rascality, sexual misconduct or general depravity, or (2) are falsehoods that injure one in her office, business, profession, or occupation. *See, e.g., Main*, 348 S.W.3d at 390. Here, the evidence established that Appellant's statements made to Gallery artists, clients and employees charged Dunn with a crime (perjury), dishonesty, unfair business dealings, and fraud. They were falsehoods that tend to injure her business and occupation and are actionable under a claim for defamation.

The imputation of sexual misconduct, such as adultery, is defamatory *per se* under Texas law. *Shipp*, 439 S.W.3d at 440; *Levine v. Steve Scharn Custom Homes, Inc.*, 448 S.W.3d 637, 650 (Tex. App.—Houston [1st Dist.] 2014, pet. denied); *Tex. Disposal Sys. Landfill, Inc. v. Waste Mgmt. Holdings, Inc.*, 219 S.W.3d 563, 581 (Tex. App.—Austin 2007, pet. denied). Section 73.001 of the Civil Practices and Remedies Codes captures statements that tend to impeach one's virtue. *See Neely* 418 S.W.3d at 52. Here, Appellant admitted he lacked not only proof but even a good faith belief of an affair. (Statement of Facts ¶ 10.) In contrast, Dunn was unequivocal in her denial of any infidelity or misbehavior. (*Id.*) His statements contain clear innuendo of adultery, conclusions that are false, misleading, and defamatory. (*Id.*)

Appellant next argues that the Temporary Injunction is overbroad with respect to the identity of customers and/or artists. Where confidential customer

information is one of the main assets to be protected, public disclosure of the private information is not necessary. *See Cottingham v. Engler*, 178 S.W.2d 148, 151 (Tex. Civ. App.—Dallas 1944, no writ). Courts do not find it unreasonable to assume that he who is sought to be enjoined is sufficiently familiar with the business and its customers to avoid violating the injunction. *See Cottingham*, 178 S.W.2d at 151. Even when the names of some customers are in evidence, the trial court may enjoin as to all customers. *See Collins v. Ryon's Saddle & Ranch Supplies, Inc.*, 576 S.W.2d 914, 915 (Tex. Civ. App.—Fort Worth 1979, no writ). Here, Appellant possesses the General Ledger that lists the clients and artists of the Gallery. There is no ambiguity as to their identity or the scope of the injunction.

### c.  Harmful Access by Computer Violation.

The evidence conclusively established a violation of the Harmful Access by Computer Act. Tex. Civ. Prac. & Rem. Code § 143.001. Defendant admitted that he accessed Dunn's phone and took pictures of private text messages without her knowledge or consent. The District Court did not abuse its discretion in issuing Temporary Injunction ¶ 2 injunction, prohibiting the disclosure of any emails, voice mail messages, text messages, phone logs or other data originating from Dunn's mobile or smart phone that were obtained in violation of state law. (C.R. 260, ¶ 2.)

### d. Texas Wiretapping Violation.

Likewise, the evidence conclusively established a violation of Section 123.001(2) of the Interception of Communications Act (ICA). The evidence showed that Appellant placed a hidden digital recorder in Dunn's car and recorded communications and phone conversations in which he was not a party. (Statement of Facts ¶ 19.) These activities violate Section 123.001(2) of the ICA. While he now claims that he does not recall whether he retains those recordings, even if now destroyed, Dunn testified that she reviewed a detailed log that he prepared when he transcribed those recorded conversations. (*Id.*). Dunn has adequately shown a violation of the ICA and may recover $10,000 for each violation, a remedy that Appellant is not financially solvent to answer. The existence of the transcriptions confirms the unlawfully obtained recordings and supports the trial court's injunction against publication of them.

### e. Defamation and Business Disparagement.

To maintain a cause of action for defamation, the plaintiff must prove that the defendant: (1) published a statement; (2) that was defamatory concerning the plaintiff; (3) while acting with either actual malice, if the plaintiff was a public figure, or negligence, if the plaintiff was a private individual, regarding the truth of the statement. *WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998); *Glenn v. Gidel*, 496 S.W.2d 692, 697 (Tex. Civ. App.—Amarillo 1973, no writ)

(elements of slander). To prevail on a business disparagement claim, a plaintiff must establish that (1) the defendant published false and disparaging information about it, (2) with malice, (3) without privilege, (4) that resulted in special damages to the plaintiff. *Forbes Inc. v. Granada Biosciences, Inc.*, 124 S.W.3d 167, 170, 47 Tex. Sup. Ct. J. 162 (Tex. 2003); *Hurlbut v. Gulf Atl. Life Ins. Co.*, 749 S.W.2d 762, 766, 31 Tex. Sup. Ct. J. 144 (Tex. 1987).

As discussed in Issue 1, the record contained evidence that Appellant had made false, misleading, and defamatory statements regarding Dunn. The trial court did not err when it found a probable right to recovery on the defamation claim or entered a narrow injunction to maintain the status quo pending a trial on the merits. (C.R. 261, ¶ 7.)

Appellant nevertheless contends that the evidence is insufficient to show a probable right of recovery. But since the standard of review is to "draw all legitimate inferences from the evidence in the light most favorable to the trial court's judgment," these factual insufficiency points are not proper grounds for review. *Keystone Life Ins.,* 687 S.W.2d at 91. In the light most favorable to the trial court's judgment, Appellant published statements that Dunn is a perjurer, adulterer, and swindler which the evidence confirmed were false, misleading, and defamatory. (*See*, Issue 1, above.) Plaintiffs are not required to show evidence of

damages given that his statements are defamatory *per se* and presumed to injure Dunn's reputation**.**

## f. Invasion of Privacy

The evidence showed that Appellee surreptitiously recorded Dunn's private conversations without her knowledge or consent. (Statement of Facts ¶ 17, C.R. 260-262, ¶¶ 4-7.) To sustain an invasion of privacy claim, three elements are necessary: (1) an intentional intrusion; (2) upon the seclusion, solitude or private affairs of another; (3) which would be highly offensive to a reasonable person. *Blanche v. First Nationwide Mortg. Corp.*, 74 S.W.3d 444, 455 (Tex. App.— Dallas 2002, no pet.). In essence, Appellant claims that because they were married, he has the legal right to invade her privacy, secretly record her in their home and bedroom, selectively edit those conversations and then distribute the recordings to the public in an effort to harm Dunn's reputation and business. *Id.*

It is undisputed that the intrusion occurred. Appellant made the recordings without Dunn's knowledge or consent. It is also undisputed that the recordings were made in the privacy of their home. A spouse shares equal rights in the privacy of the bedroom, and nothing suggests that the right of privacy is limited to unmarried individuals. *Clayton v. Richards*, 47 S.W.3d 149, 155 (Tex. App.— Texarkana 2001)(videotaping spouse in privacy of bedroom without their knowledge invades spouse's privacy); *see also Collins v. Collins*, 904 S.W.2d 792,

797 (Tex. App.—Houston [1st Dist.] 1995), *writ denied per curiam*, 923 S.W.2d 569 (Tex. 1996)(statutory violation of the prohibition against the use of illegally intercepted telephonic communications)

The evidence also satisfied the third element. A recording surreptitiously made in a place of privacy at a time when the individual believes that he or she is in a state of complete privacy can be highly offensive to an ordinary reasonable person. *Clayton*, 47 S.W. 3d at 155. Taping "without consent or awareness when there is an expectation of privacy goes beyond the rights of a spouse because it may record private matters, which could later be exposed to the public eye. . . ." *Id.*

Having established a probable right of recovery, Dunn presented evidence that she will suffer irreparable harm if Appellant is permitted to continue to disclose recordings made from that intrusion. (Statement of Fact ¶ 20.) Appellant's claimed "right" to distribute statements extracted and edited from private conversations recorded without Dunn's consent or knowledge do not trump Dunn's right to privacy.

Because Appellant has previously published those conversations, Appellees established a prima facie case for injunctive relief enjoining him from making the same disclosures in the future that he has admitted making in the past.[6] There are

---

[6] Appellant suggests to this Court that the recordings have been published to only 10 people. Following the close of the evidence at the temporary injunction hearing, Appellant posted the audio clips on a website www.therealtd.com and attempted to drive traffic to that website

no prior restraint concerns at play here. While Appellant complains that Dunn will not ultimately prevail at trial, this gripe does not establish an abuse of discretion.

**B.    The District Court's Award of Attorneys' Fees for Appellant's Motion to Dismiss Should Not Be Set Aside.**

The trial court made two rulings in its March 18, 2015 Order Denying Defendant's Motion to Dismiss: (1) the Motion to Dismiss was denied; and (2) the Motion to Dismiss was frivolous so that courts costs and reasonable attorneys' fees were awarded. (Supplemental C.R. 248-249.) The only issue presented for review is the second ruling, "[w]hether the trial court erred by awarding attorneys' fees to Appellees in opposing [Appellant's] motion to dismiss." Brief at 3.

**1.    <u>ISSUE 5: The Trial Court Did Not Abuse its Discretion When it Determined that Plaintiff's Motion was Frivolous and Awarded Fees.</u>**

The trial court properly awarded attorneys' fees after finding that Appellant's motion to dismiss was frivolous. Appellant filed a Motion to Dismiss under TEX. CIV. PRAC. & REM. CODE § 27.003(a) claiming that he had met his evidentiary burden to show that Dunn was a "public figure" or that this matter was otherwise appropriately decided under the anti-SLAPP statute.

A hearing was held on March 16, 2015. At the time of the hearing, the trial court had entered an injunction finding Appellees had established a probable right

---

through public postings on his Facebook page. Appellant notes on the public website that he took the audio clips down only because the District Court enjoined him from doing so and states that he intends to republish them to the public as soon as possible.

50

to recovery on the claims challenged in the Motion to Dismiss. Appellant nevertheless pressed forward, claiming that he had met his burden to show the statute applied and that Appellees had failed to establish a prima facie case on claims that the court had already ruled that a probable right of recovery exists. Judge Aiken observed that advancing the argument that Appellees claims are frivolous after the trial court ruled that they had a probable right of recovery "disturbs me more than anything else at this point. And also it would seem to conflict, also, with Rule 13, as well." (R.R. Volume 1, Motion to Dismiss, 77.)

Other disturbing issues were raised to the trial court during the hearing. For example, Appellant offered no evidentiary support and cited no authority in his briefing or before the trial court to support the claim that the lawsuit involved a "matter of public concern." (R.R., Volume 1, Motion to Dismiss, 41-44.) In fact, Appellant misrepresented to the trial court that <u>no</u> cases have considered who qualifies as a "public figure" under the Texas statute. (*Id.* at 20.) In fact, as Appellees pointed out at the hearing, not only does the jurisprudence on "public figure" date back to at least the 1964 Supreme Court *New York Times v. Sullivan*, 376 U.S. 254 (1964) case, this Dallas Court of Appeals addressed the very issue under the TCPA in 2014. *See Pickens v. Cordia*, 433 S.W.3d 179 (Tex. App.— Dallas 2014, no pet.). In a case where Appellant argued that Dunn was a public figure and claimed the absence of any guiding precedent, the trial court then

51

learned that this Dallas Court of Appeals had determined just last year that T. Boone Pickens was not a public figure for purposes of the TCPA. (R.R. Volume 1, Motion to Dismiss, 56-57.)

Appellant also failed to identify which causes of action brought by Appellees relates to the so-called right to petition. (*Id.* at 45-46.) In advancing his claims that Appellees' causes of action were frivolous, Appellant did, however, seek to block the 500 pages of testimony and evidence adduced over the three-day temporary injunction hearing. (*Id.* at 3). Because Appellant offered no evidence of a "public concern" and failed to meet his initial burden of proof under the statute, no obligations for Appellees were triggered.

In filing the Motion to Dismiss and the Amended Motion to Dismiss, Appellant's counsel certified that the legal contentions were warranted by existing law—but cited no authority—or advanced a non-frivolous argument for the extension, modification, or reversal of existing law or the establishment of new law. The trial court did not abuse its discretion in determining that this certification was false, that Appellant did not cite controlling authority to the trial court, and that Appellant advanced troubling arguments regarding the frivolous nature of the claims in light of the Temporary Injunction. In other words, the district court clearly set forth in its Order and at the hearing the basis for the sanctions.

Accordingly, Appellees' request for reasonable expenses and attorneys' fees in opposing the Motion to Dismiss and Amended Motion to Dismiss was within the discretion of the trial court to award under Section 10.002 of the Texas Civil Practice and Remedies Code.

## 2. Appellant Waived Any Right to Appeal the Order Denying the Motion to Dismiss.

Appellant's Prayer for relief requests that the "Order denying [Appellant's] motion to dismiss and awarding attorneys' fees to Appellees be reversed." (Brief at 54, emphasis added.) Appellant waived any issue that the Order denying the Motion to Dismiss should be considered on appeal.

To present an issue to this Court, a party's brief shall contain, among other things, a concise, non-argumentative statement of the facts of the case, supported by record references, and a clear and concise argument for the contentions made with appropriate citations to authorities and the record. TEX. R. CIV. P. 38.1; *McIntyre v. Wilson*, 50 S.W.3d 674, 682 (Tex. App.—Dallas 2001, pet. denied). An issue on appeal unsupported by argument or citation to any legal authority presents nothing for the Court to review. *Birnbaum v. Law Offices of G. David Westfall*, 120 S.W.3d 470, 477 (Tex. App.—Dallas 2003, pet. denied).

When a party fails to adequately brief a complaint, he waives the issue on appeal. *In re N.E.B.,* 251 S.W.3d 211, 212 (Tex. App.—Dallas 2008, no pet.). Bare assertions of error, without argument or authority, are insufficient to preserve

error for our review. *See Sullivan v. Bickel & Brewer*, 943 S.W.2d 477, 486 (Tex. App.—Dallas 1995, writ denied). Here, other than a request for relief in the Prayer, Appellant does not make even "bare assertions of error" regarding the Order Denying the Motion to Dismiss so that any issue, if later raised on appeal, is waived.

## VIII. PRAYER

For the reasons stated above, Dunn and the Gallery respectfully request that the Court affirm the District Court's temporary injunction and order awarding attorneys fees related to Appellant's Motion to Dismiss.

JACKSON LEWIS P.C.
500 N. Akard Street, Suite 2500
Dallas, Texas 75201
PH: (214) 520-2400
FX: (214) 520-2008


By: */s/ Dan Hartsfield*
Dan Hartsfield
State Bar No. 09170800
dan.hartsfield@jacksonlewis.com
Talley Parker
State Bar No. 24065872
talley.parker@jacksonlewis.com

## CERTIFICATE OF COMPLIANCE

I certify that this computer-generated brief contains <u>10,946 </u>words.

<u>*/s/ Dan Hartsfield*          </u>
Dan Hartsfield


## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing document was served on counsel for Appellant Bradley Miller on August 3, 2015.

<u>*/s/ Dan Hartsfield*          </u>
Dan Hartsfield